Opinion issued March 10, 2015



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-13-00921-CV

---

## IN RE COMMITMENT OF DENNIS RAY STUTEVILLE

---

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Court Case No. 12-12-13060-CV**

---

# OPINION

This case involves a civil commitment pursuant to the Sexually Violent Predator Act ("the SVP Act").[1] A jury found that Dennis Ray Stuteville is a sexually violent predator as defined in the SVP Act, and the trial court rendered a final judgment and an order of civil commitment. In seven appellate issues,

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.151 (West 2010 & Supp. 2014).

Stuteville argues that: (1) there is legally insufficient evidence that he has "serious difficulty controlling his behavior"; (2) there is factually insufficient evidence that he has "serious difficulty controlling his behavior"; (3) the trial court abused its discretion when it denied his request for a separate jury instruction on "serious difficulty controlling behavior"; (4) the trial court abused its discretion by admitting evidence of uncharged offenses allegedly committed by Stuteville for the limited purpose of explaining the basis of the State's expert's opinion; (5) the trial court abused its discretion by admitting evidence of details of these uncharged offenses, as well as details of the charged offenses for the limited purpose of explaining the basis of the expert's opinion; (6) the trial court erred when it granted the State's motion for a directed verdict on the issue of whether he is a "repeat sexually violent offender"; and (7) the trial court improperly commented on the weight of the evidence during voir dire.

We affirm the trial court's judgment and order of civil commitment.[2]

## Background Summary

On June 7, 2004, Stuteville pleaded guilty to two charges of indecency with a child by sexual contact, and three charges of indecency with a child by exposure. The court assessed Stuteville's punishment at ten years' confinement in the

---

[2] This appeal, originally filed in the Ninth Court of Appeals, Beaumont, Texas, was transferred to the First Court of Appeals, Houston, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases).

Institutional Division of the Texas Department of Criminal Justice ("TDCJ") with respect to each of the two charges of indecency with a child by sexual contact, and five years' confinement in TDCJ with respect to each of the three charges of indecency with a child by exposure. The sentences in all five cases ran concurrently.

Stuteville was scheduled to be released from TDCJ on December 23, 2013. On December 14, 2012, the State filed a petition in the 435th District Court in Montgomery County to civilly commit Stuteville as a sexually violent predator under the SVP Act,[3] alleging that he was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a) (West Supp. 2014). While at TDCJ, Stuteville was evaluated by forensic psychologist Dr. Jason D. Dunham, who concluded that Stuteville met the statutory requirement of behavioral abnormality.

The trial court determined that Stuteville was indigent and appointed him counsel who filed an answer. Two witnesses testified at the jury trial: Dr. Lisa Clayton, the State's expert witness, and Stuteville.

---

[3] The SVP Act requires that a petition for civil commitment of a sexually violent predator be filed in Montgomery County. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.041(a) (West 2010).

## A.   Dr. Clayton

Dr. Clayton, who is board certified in both general and forensic psychiatry, was retained by the State to evaluate Stuteville and determine whether he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Clayton testified that she has evaluated approximately 135 sex offenders for behavioral abnormalities during the past thirteen years and testified as an expert witness in civil commitment trials arising from approximately half of those cases.

Dr. Clayton testified that when she evaluates someone for a behavioral abnormality, she begins by compiling and reviewing any available records on that individual and then meets with the person and performs a face-to-face interview and evaluation. Dr. Clayton explained that this is the methodology relied upon by forensic psychiatrists when formulating an opinion in such cases.

Dr. Clayton testified that she reviewed police reports from two different jurisdictions, victim statements, indictments, plea bargain forms, Stuteville's penitentiary packets, sex offender treatment records, and medical records, and spoke with a witness in one case. She also reviewed prior psychological evaluations by the sex offender treatment program ("SOTP") and forensic psychologist Dr. Dunham. After reviewing these records, Dr. Clayton met with Stuteville for three hours in February 2013. After her interview, she reviewed

4

Stuteville's most recent medical history and his deposition testimony in this civil commitment proceeding. Dr. Clayton testified that based on her education, training, experience, and the methodology she employed, she believed, to a reasonable degree of scientific certainty, that Stuteville suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Clayton testified that Stuteville had somewhere between twenty-seven and forty-three victims going back to 1987, apart from "the ones he was charged with," and she described various details of these charged and uncharged offenses for the jury. Stuteville objected to Dr. Clayton testifying about the charged and uncharged offenses based on hearsay and argued that the evidence was more prejudicial than probative pursuant to Rules of Evidence 403 and 705(d). The trial court overruled Stuteville's objections, granted him a running objection, and, at Stuteville's request, gave the jury the following oral instruction:

> [H]earsay normally is not admissible. However, certain hearsay information contained in records reviewed by experts is allowed into evidence through expert testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion.

Stuteville did not object or request a different instruction.

## 1. Charged Offenses

Dr. Clayton testified that Stuteville pleaded guilty to two charges of indecency with a 10-year-old girl by sexual contact in 2004 for which he received prison sentences.

According to Dr. Clayton, Stuteville befriended the mother of two girls, and eventually began babysitting for them. One of these girls was the named complainant in the two indecency-by-contact convictions. Stuteville paid the girls to perform chores around his home, and he bought them toys, clothing, and jewelry. He would also let the girls swim and play naked in his hot tub. Dr. Clayton described Stuteville's conduct as "grooming," and explained to the jury that "grooming" is something sophisticated pedophiles do in order to offend against children while lessening the chances of the child telling someone about the abuse.

The ten-year old complainant told law enforcement that she spent many months with Stuteville, swimming naked in his hot tub, giving and receiving naked massages with oil, mutual masturbating, and watching pornography. The girl claimed that Stuteville threatened that she would be taken away from her mother if she told anyone. After a visit to the school nurse's office in 2002, the nurse contacted CPS due to a suspicious yeast infection. CPS's investigation culminated in the two charges of indecency with a child by sexual contact that Stuteville pleaded guilty to in 2004. Stuteville denied the allegations against him and blamed the girl's mother.

Dr. Clayton testified that Stuteville's house was "kind of like the neighborhood Disneyland, where lots of little kids wanted to come over."

Stuteville had a bicycle, go-cart, hot tub, and a constant Christmas tree with hundreds of wrapped presents. According to Dr. Clayton, Stuteville told her his house was "a kid magnet."

Dr. Clayton testified that Stuteville also pleaded guilty to three charges of indecency with a child by exposure in 2004. According to Dr. Clayton, those charges involved three sisters (ages 5, 9, and 12) who lived down the street from Stuteville. The girls began going over to Stuteville's house after they saw other children there. The girls told law enforcement that they swam naked in the hot tub with Stuteville and that Stuteville exposed himself to them on other occasions, masturbated and ejaculated in front of them, and tried to get them to watch pornography with him. Stuteville also tried to convince the girls to let him fondle their breasts and "lick their middles" (i.e., "their vaginal area without clothes on") and told them that other little other girls had let him touch them in that way before. Stuteville, who warned the girls not to tell anyone, showed them a gun and a large knife that he kept by his bed. Stuteville pleaded guilty to three counts of indecency by exposure involving these girls and was sentenced to five years' imprisonment in each case.

Dr. Clayton testified that Stuteville told her that he did not commit any of these crimes even though he had pleaded guilty and that he had been kicked out of

7

sex offender treatment for not admitting the offenses. His denial and his lack of sex offender treatment are risk factors for him reoffending sexually.

## 2. Uncharged Offenses

Dr. Clayton testified that although he had only been convicted of offending against these four prepubescent girls in 2004, the police records and victim statements that she had reviewed indicated that Stuteville had committed many other offenses against many other victims beginning as early as 1987. Based on her review of the records, Dr. Clayton testified that Stuteville had somewhere between twenty-seven and forty-three victims, including his own daughter and granddaughter. Dr. Clayton also testified that several of the girls reported to law enforcement that Stuteville had told them that he had "43 adopted daughters." According to Dr. Clayton, this number referred to Stuteville's count of the girls he had sexually assaulted.

In particular, Dr. Clayton testified that Stuteville's teenage daughter made an outcry in 1987, claiming that her father had masturbated in front of her, and made her sit naked while he fondled her breasts and genitals. Although the girl was removed from the home and charges were filed against Stuteville, the girl died in an automobile accident and the charges were later dismissed.

Dr. Clayton also testified that after the charges that resulted in Stuteville's 2004 plea bargain became public, another young woman came forward and said

8

that he had done the same things to her when she was young. She also named five other girls that she had seen Stuteville sexually offend against.

According to Dr. Clayton, all of the children interviewed by law enforcement knew that no one was allowed to wear clothing in the hot tub, and many acknowledged either swimming naked with Stuteville in the hot tub or seeing Stuteville swimming naked with other children—including Stuteville's seven-year old granddaughter. The children also reported that Stuteville gave gifts and toys to them, and even tried to pay some of the little girls to do housework in the nude.

### 3. "Risk factors"

Dr. Clayton testified that "risk factors" are broad characteristics based on research, and identified by forensic psychology and forensic psychiatry, which offenders have in common. In this evaluation, Dr. Clayton used risk factors to fortify her medical opinion that Stuteville suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In particular, Dr. Clayton testified that Stuteville has a sexual deviancy (i.e., pedophilia non-exclusive type, to both males and females) and a personality disorder not otherwise specified with antisocial and narcissistic traits. Sexual deviancy and antisocial personality disorders are risk factors for reoffending sexually.

The records Dr. Clayton reviewed indicated that Stuteville is a "sophisticated devious pedophile" who is very stimulated by children and has created a child-friendly home and befriended the children and their mothers in order to act out his sexual deviancy. Pedophilia is a lifelong, chronic condition that does not go away.

Dr. Clayton explained that pedophiles have difficulty controlling their emotional, and sometimes volitional, capacity and that sex offender treatment can "help the person realize . . . learn ways that they can try to control it so that they don't act on it." Dr. Clayton further opined that Stuteville had not "had enough treatment to control his" behavior.

Dr. Clayton testified that the past behavior of pedophiles is often indicative of what they will do in the future because "sexual deviation and [sexual attraction does not] change over time." A person's past behavior must be studied in order to determine whether he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence in the present. Dr. Clayton explained that she considered the facts of Stuteville's charged and uncharged offenses and relied on them in forming her expert opinion in this case. According to Dr. Clayton, the facts of the underlying offenses were necessary for purposes of her evaluation of Stuteville because they showed her the depth and breadth of the acts he committed while acting out on his sexual deviancy.

10

Dr. Clayton also reviewed actuarial tests given to Stuteville by earlier evaluators which calculated Stuteville's risk to reoffend as average, but the test reassessed his risk at the low-to-moderate range when Stuteville's advanced age was taken into consideration. Dr. Clayton explained that the first test is more accurate in this case because Stuteville committed the charged offenses in his early to mid-fifties, which is well beyond the age of forty-five, where sex offenders usually offend less often. Dr. Clayton further explained that the actuarial tests underestimated Stuteville's risk of reoffending because Stuteville is "kind of an aberration" because he began offending at a much later age than most pedophiles. He also had a much longer offending history and "wider victim pool" than the actuarial tests considered.

In addition to Stuteville's sexual deviancy and personality disorder, Dr. Clayton also identified numerous other risk factors indicating that Stuteville posed a high risk of reoffending. These other risk factors include the fact that Stuteville (1) has a lengthy offending history which spans more that fifteen years, (2) has a large number of victims, (3) has both male and female victims, (4) actively recruited his victims, (5) offended after the age of forty-five, (6) attempted to hide his crimes and avoid detection, (7) was kicked out of sex offender treatment after a couple of months because he denied needing treatment, (8) continues to deny any

11

wrongdoing, and (9) lacks any insight into the danger of him being around children.

Although prison authorities attempted to provide Stuteville with sex offender treatment, Stuteville repeatedly denied needing treatment and did "everything he [could] do to avoid it," including faking an illness in order to avoid attending treatment sessions. Dr. Clayton further testified that Stuteville had not "had enough treatment to control his behavioral abnormality." According to Dr. Clayton, Stuteville's denial of any wrongdoing and his lack of sex offender treatment are risk factors for him reoffending sexually.

Dr. Clayton testified that based on her interview and her review of Stuteville's records, she believed that Stuteville posed a high risk of reoffending sexually.

## B.    Stuteville

At trial, Stuteville was questioned extensively about the facts and details of the charged and uncharged sexual offenses that Dr. Clayton had previously testified about. He admitted to some of the facts (e.g., babysitting for and buying gifts for some of the children, allowing neighborhood children into his home, having a playset in his backyard and a playroom in his house "for the younger ones"). Stuteville also admitted to telling the children who visited his home that they had to be naked in order to swim in his hot tub, but he claimed that it "was

12

just an excuse to keep people out of it." He acknowledged that some of the children got in the hot tub anyway (some of whom were clothed while others were naked), but he denied being in the hot tub with any of the children.

Stuteville testified that he was charged with sexually offending against his teenage daughter in 1990, but he denied any wrongdoing. Although he admitted that he had been previously convicted of two counts of indecency with a child by sexual contact and three counts of indecency with a child by exposure in 2004, he denied committing any offenses. According to Stuteville, three other charges of indecency with a child were also filed against him, but those were dismissed before his plea bargain because the girl admitted that she lied.

He also testified that he was not aware that he had been accused in the twenty-seven to forty-three uncharged cases that Dr. Clayton talked about until his deposition in this civil commitment case. When asked if any of the children allegedly involved in the charged and uncharged sexual offenses were his "victims," Stuteville responded, "No. And I'm not in denial either." Stuteville testified that he attended the SOTP while incarcerated at TDCJ because he was forced to do so, but that he did not believe that he needed such treatment.

## C. Motions for Directed Verdict and the Jury Charge

After both sides rested, Stuteville moved for a directed verdict and argued that that there was legally insufficient evidence that he currently suffers from a

13

behavior abnormality that makes him likely to engage in a predatory act of sexual violence. Stuteville's motion was denied.

The State moved for a directed verdict on the issue of whether Stuteville was a "repeat sexually violent offender," based upon Stuteville's testimony, as well as his penitentiary packet which was admitted into evidence without objection. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(b) (West Supp. 2014) (defining "repeat sexually violent offender" as person who has been convicted of more than one sexually violent offense and sentenced for at least one such offense). The State's motion was granted.

During the charge conference, Stuteville requested a separate instruction on the issue of "serious difficulty in controlling behavior." The trial court denied the request after noting that the court's charge tracked the language of the SVP Act and had been "approved by the Court of Appeals."

The submitted charge, which tracked the language of the SVP act, included the statutory definitions of "sexually violent predator," "behavioral abnormality," and "predatory act." The charge also instructed the jury that the trial court had granted a directed verdict on the issue of whether Stuteville is a repeat sexually violent offender. As a result, the jury was asked to decide only one question: "Do you find beyond a reasonable doubt that DENNIS RAY STUTEVILLE is a

14

sexually violent predator?" The jury answered, "yes." The trial court also included the following written limiting instruction in the jury charge:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by the experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

Stuteville did not object or request a different instruction.

Based on the jury's finding that Stuteville is a sexually violent predator, the trial court signed a judgment and order of commitment, ordering Stuteville to undergo outpatient treatment and to be subject to certain terms of supervision. This appeal followed.

### Sufficiency of the Evidence

In his first and second issues, Stuteville argues that there is legally and factually insufficient evidence supporting the jury's finding that he has "serious difficulty controlling his behavior."

### A.     Standard of Review

This is a civil proceeding but because the State's burden of proof is the same as in a criminal case, we review SVP cases for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet.

15

denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979)). Under this standard of review, we assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *See Mullens*, 92 S.W.3d at 885; *see also In re Commitment of Hatchell*, 343 S.W.3d 560, 563 (Tex. App.—Beaumont 2011, no pet.). It is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Mullens*, 92 S.W.3d at 887.

When reviewing a challenge to the factual sufficiency of the evidence in a SVP case, we weigh all of the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied). We "view all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt." *Id.* at 206. We will only reverse if, after weighing the evidence, we determine that "the risk of an injustice remains too great to allow the verdict to stand." *Id.* at 213. In conducting our review, we may not substitute our judgment for that of the jury which is the sole judge of the credibility of witnesses

16

and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## B.    Applicable Law

In an SVP case, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. TEX. HEALTH & SAFETY CODE ANN. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014).

The U.S. Supreme Court requires the State to prove that a respondent has "serious difficulty in controlling [his] behavior" in order to civilly commit him under any SVP statute. *See Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 870 (2002). The inability to control one's behavior "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.*

17

With regard to Texas's SVP statute, the Beaumont Court of Appeals has repeatedly held that a "behavioral abnormality" is considered "an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied). When a jury finds that a person is a sexually violent predator, that finding entails an implicit determination that the respondent has serious difficulty controlling behavior. *See id.* at 505–06. Further, a jury may infer that a respondent has serious difficulty controlling his current behavior based on his past behavior.[4] *See In re Commitment of Washington*, No. 09–11–00658–CV, 2013 WL 2732569, at *5–6 (Tex. App.—Beaumont June 13, 2013, pet. denied) (mem. op.).

## C. Analysis

Stuteville argues that there is legally and factually insufficient evidence supporting the jury's finding that he has "serious difficulty controlling his behavior." The evidence in this case consists primarily of the testimony of Stuteville and Dr. Clayton, and Stuteville's penitentiary packet which reflects that he pleaded guilty to sexually offending against four prepubescent girls in 2004.

At trial, Stuteville admitted that he had been convicted of two counts of indecency with a child by sexual contact and three counts of indecency with a child

---

[4] Stuteville argues on appeal that evidence that he committed past crimes does not by itself, or in combination with Dr. Clayton's testimony, support a finding that he has serious difficulty controlling his behavior. His only source for this claim, however, is an article that was never offered or admitted into evidence at trial.

18

by exposure in 2004, and charged with sexually offending against his teenaged daughter in 1990, but he denied any wrongdoing and testified that he only pleaded guilty to the five offenses because his lawyer told him to do so. Stuteville testified that he was not sexually attracted to children, denied that he ever had "a problem with sexually offending against children," and claimed that the children's families fabricated all of the sexual allegations against him because they were mad at him. He also denied being a sex offender or needing sex offender treatment, and he testified that he only attended TDCJ's SOTP because he was forced to do so.

Dr. Clayton testified that, in her expert medical opinion, Stuteville has a behavioral abnormality as defined by the SVP Act that makes him likely to engage in a predatory act of sexual violence. In particular, Dr. Clayton testified that Stuteville has been diagnosed with pedophilia and a personality disorder with antisocial and narcissistic traits. She explained that Stuteville had not "had enough treatment to control his behavioral abnormality."

In addition to Stuteville's sexual deviancy (pedophilia) and personality disorder, Dr. Clayton also identified numerous other risk factors that increase Stuteville's likelihood of reoffending sexually, including, his advanced age when he offended, his lengthy offending history, his large victim pool that includes both male and female children, and the fact that he actively recruited his victims and attempted to hide his crimes and avoid detection. Dr. Clayton testified that

19

Stuteville's denial of any wrongdoing, his lack of sex offender treatment, and his lack of any insight into the danger of him being around children placed him at high risk for reoffending sexually.

The jury could reasonably infer that Stuteville has serious difficulty controlling his behavior based on the evidence presented to them. *See Washington*, 2013 WL 2732569, at *5–6 (stating that jury may infer that respondent currently has serious difficulty controlling his behavior based on respondent's past behavior, respondent's testimony, and expert testimony); *cf. In re Commitment of Moss*, No. 09–12–00599–CV, 2014 WL 580694, at *1–2 (Tex. App.—Beaumont Feb. 13, 2014, pet. denied) (mem. op.) (holding expert testimony that respondent had multiple convictions for sexual offenses was sufficient to distinguish him from "a typical recidivist because his multiple convictions evidence that his behavioral abnormality affects his ability to control his sexual behavior"). Dr. Clayton's opinion that Stuteville has a behavioral abnormality, as defined by the SVP Act, necessarily entails a related finding that he has "serious difficulty controlling his behavior." *See Almaguer*, 117 S.W.3d at 505–06; *see also In re Commitment of Browning*, 113 S.W.3d 851, 862–63 (Tex. App.—Austin 2003, pet. denied).

Examining all of the evidence in a light most favorable to the verdict, in reviewing legal sufficiency, we hold that a rational jury could have found beyond a reasonable doubt that Stuteville has serious difficulty controlling his behavior. *See*

20

*Mullens*, 92 S.W.3d at 885; *see also In re Commitment of Chappell*, No. 09–13–00130–CV, 2014 WL 346090, at *1–2 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.). Further, weighing all of the evidence in a neutral light and applying the factual sufficiency standard, we hold that a rational jury could have found beyond a reasonable doubt that Stuteville has serious difficulty controlling his behavior. *See Day*, 342 S.W.3d at 206. Such a finding is implicit in the jury's express finding that Stuteville suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Almaguer*, 117 S.W.3d at 505–06; *see also Browning*, 113 S.W.3d at 862–63.

Because the evidence is both legally and factually sufficient to support the jury's verdict and implicit finding that Stuteville has "serious difficulty in controlling [his] behavior," we overrule Stuteville's first and second issues.

## Jury Charge

In his third issue, Stuteville argues that the trial court abused its discretion when it denied his request to include a separate jury instruction on "serious difficulty controlling behavior."

A trial court's decision to refuse a particular instruction in its charge is reviewed for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). A trial court may refuse to give a requested instruction or definition that is not necessary to enable the jury to render a verdict, even if the instruction or

21

definition is a correct statement of the law. *In re Commitment of Taylor*, No. 09–10–00231–CV, 2010 WL 4913948, at \*1–3 (Tex. App.—Beaumont Dec. 2, 2010, no pet.) (mem. op.).

Here, the trial court's charge tracks the language of the SVP Act and contains the applicable statutory definitions, including the statutory definition of behavioral abnormality. Stuteville requested a separate instruction on the issue of whether he has serious difficulty in controlling his behavior. The Beaumont Court of Appeals has consistently held that a trial court's refusal to include a separate instruction on the issue of "serious difficulty controlling behavior" does not constitute an abuse of discretion because the lack-of-control question "is implicitly included within the issue submitted to the jury." *Almaguer*, 117 S.W.3d at 502, 505–06; *In re Commitment of Taylor*, 2010 WL 4913948, at \*3. Although Stuteville's requested instruction is a proper statement of case law, *see Almaguer*, 117 S.W.3d at 505–06, it is not statutory law and was not necessary to enable the jury to render a verdict in this case. *See Taylor*, 2010 WL 4913948, at \*1–3. The trial court did not abuse its discretion in denying Stuteville's requested instruction.

We overrule Stuteville's third issue.

### Admission of Evidence

In his fourth and fifth issues, Stuteville contends that the trial court abused its discretion by admitting evidence of uncharged offenses that he allegedly

committed, details of these uncharged offenses, and details of his charged offenses for the limited purpose of explaining the basis of Dr. Clayton's expert medical opinion. Stuteville argues that the admission of this evidence was unfairly prejudicial and that the jury must have considered the evidence for the truth of the matter asserted, despite the trial court's instructions to the contrary.

## A. Standard of Review

"We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see Day*, 342 S.W.3d at 218. We will not reverse unless the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1).

An expert in a SVP Act civil commitment proceeding may disclose details regarding the underlying facts or data that the expert relied on in arriving at her opinion. *See In re Commitment of Anderson*, 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied); TEX. R. EVID. 705(a) (stating "expert may . . . disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data"). In an SVP case, having an expert explain the facts he considered, including past sexual offenses, and how those facts influenced his evaluation, assists the jury in weighing the expert's opinion on the ultimate issue. *See In re Commitment of Young*, 410 S.W.3d 542, 557 (Tex. App.—Beaumont 2013, no pet.).

23

Rule of Evidence 403 also provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Factors considered when applying the Rule 403 balancing test "include the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence." *Anderson*, 392 S.W.3d at 882.

## B. Sufficiency of Limiting Instructions

In this case, Stuteville objected to Dr. Clayton testifying about the uncharged offenses and the details of the charged and uncharged offenses based on hearsay and argued that the evidence was more prejudicial than probative pursuant to Rules of Evidence 403 and 705(d). The trial court overruled Stuteville's objections, granted him a running objection, and, at Stuteville's request, gave the jury the following limiting instruction:

> [H]earsay normally is not admissible. However, certain hearsay information contained in records reviewed by experts is allowed into evidence through expert testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion.

Stuteville did not object to the contemporaneous limiting instruction that was given or to the limiting instruction included in the jury charge, or request a different or additional instruction. Absent record evidence to the contrary, we

24

presume that the jury followed the court's limiting instructions. *See Golden Eagle Archery*, 116 S.W.3d at 771; *see also Day*, 342 S.W.3d at 199. Stuteville has not directed this court to any record evidence that the jury actually ignored the trial court's oral and written limiting instructions. Stuteville has failed to rebut the presumption that the jury followed the trial court's instructions.

## C.    Unfair Prejudice?

Stuteville argues that Dr. Clayton's testimony that he had approximately 27 to 43 victims, in addition to the four victims of his five charged offenses, was based largely on unsubstantiated rumors, gossip, and multiple levels of hearsay, and that "[t]he sheer volume of this evidence created a substantial danger" that the jury based its verdict on further punishing Stuteville for the uncharged sexual offenses.

Dr. Clayton testified about multiple charged and uncharged offenses attributed to Stuteville going back as far as 1987. She also testified about the details associated with these offenses, all of which involved sexual acts against children. Dr. Clayton explained to the jury how and why the underlying offenses and details of those offenses assisted her in evaluating Stuteville and in determining whether he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence and that Stuteville posed a "high" risk of reoffending sexually. In particular, Dr. Clayton testified that the details of

25

Stuteville's charged and uncharged offenses involved examples of "grooming" which is something that "more sophisticated pedophiles" do in order to offend against children while lessening the chances of the child telling. Dr. Clayton testified that such behaviors (grooming, attempting to avoid detection) are risk factors for reoffending that she considered as part of her behavioral abnormality assessment in this case.

According to Dr. Clayton, Stuteville's large number of victims and his long period of offending are illustrated by the details of the charged and uncharged offenses that she described for the jury. Evidence of Stuteville's prior uncharged sexual offenses and the details of the charged and uncharged offenses are highly probative and helpful to the jury in explaining the basis of Dr. Clayton's opinion that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Stuteville argues that the admission of the "voluminous, unneeded and emotionally charged details were . . . unfairly prejudicial because of their tendency to arouse the jury's hostility against Mr. Stuteville." However, the Beaumont Court of Appeals has repeatedly upheld a trial court's decision to allow an expert to testify about the details of such offenses in SVP cases. *See In re Commitment of Alvarado*, No. 09-13-00217-CV, 2014 WL 1285136, at *10–11 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.); *In re Commitment of King*, No.

26

09–13–00255–CV, 2014 WL 346109, at *2–3 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.) (holding trial court did not abuse its discretion by allowing expert to testify about details of respondent's past sexual offenses). Here, Dr. Clayton testified that sexual deviancy is one risk factor for reoffending and that the facts of Stuteville's offenses are important in explaining his particular sexual deviancy (pedophilia), and helping both her and the jury understand the depth and breadth of the acts he committed while acting out on his sexual deviancy.

We cannot say that the trial court abused its discretion by determining that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Based on this record, the trial court could have reasonably concluded that the facts and details related to Stuteville's offenses would be helpful to the jury in weighing his testimony and Dr. Clayton's testimony, and in explaining the basis for Dr. Clayton's opinion that Stuteville suffers from a behavioral abnormality. Given the purpose for admitting this evidence and the trial court's limiting instructions, we hold that the trial court did not abuse its discretion by admitting evidence of uncharged offenses.

## D.    Conclusion

Having determined that the trial court did not abuse its discretion by admitting evidence of uncharged offenses allegedly committed by Stuteville, or the details of both the charged and uncharged offenses, for the limited purpose of

27

explaining the basis of Dr. Clayton's expert medical opinion, we overrule Stuteville's fourth and fifth issues.

## Directed Verdict

In his sixth issue, Stuteville contends that there is a conflict between Texas Rule of Civil Procedure 268, which allows for a directed verdict in civil cases, and section 841.062(a) of the SVP Act, which provides that in a jury trial, the " jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." TEX. HEALTH & SAFETY CODE ANN. § 841.062(a); *see* TEX. R. CIV. P. 268. Because the SVP Act controls in the event of any such conflict, Stuteville argues, the trial court erred by granting the State's motion taking the issue of whether or not he is a "repeat sexually violent offender" away from the jury. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.146(b) (West 2010) (stating SVP Act civil commitment proceedings are subject to rules of civil procedure; SVP Act controls in the event of a conflict between the statute and the rules).

The Beaumont Court of Appeals recently rejected a virtually identical argument in another appeal of an SVP Act civil commitment proceeding. *See In re Commitment of Lemmons*, No. 09–13–00346–CV, 2014 WL 1400671, at *3 (Tex. App.—Beaumont Apr. 10, 2014, no pet.) (mem. op.) ("[W]e perceive no conflict between [section 841.062(a) of] the SVP statute and the Rules of Civil Procedure

that precludes the granting of a directed verdict in a jury trial when no evidence of probative value raises an issue of material fact on the question presented.").[5]

Because in SVP Act cases we are bound by the legal precedent of the Beaumont Court of Appeals, we overrule Stuteville's sixth issue.

## Improper Comment on Weight of Evidence

In his seventh issue, Stuteville contends that the trial court improperly commented on the weight of the evidence during voir dire by directing the jury's attention to the State's expert's upcoming testimony on pedophilia, and effectively bolstering the expert's credibility and reliability. The parties disagree as to whether Stuteville has preserved this issue for our review.

To preserve error, a party must object to the trial judge's alleged improper conduct or comment when it occurs and request a curative instruction, unless a proper instruction cannot render the conduct or comment harmless. *In re Commitment of Vanzandt*, 156 S.W.3d 671, 674 (Tex. App.—Beaumont 2005, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)); *see also In re Commitment of Barbee*, 192 S.W.3d 835, 848 (Tex. App.—Beaumont 2006, no pet.) (holding respondent did not preserve his complaint regarding trial judge's

---

[5] Stuteville does not contend that there is an issue of material fact on the question of whether he is a "repeat sexually violent offender," which would otherwise preclude the granting of a directed verdict. *See In re Commitment of Scott*, No. 09–11–00555–CV, 2012 WL 5289333, at *2 (Tex. App.—Beaumont Oct. 25, 2012, no pet.) (mem. op.) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77, 82 (Tex. 2000) (stating directed verdict is proper when evidence, viewed in light most favorable to nonmovant, does not raise fact issue)).

alleged improper comments during voire dire because he did not object and request curative instruction). Unwaivable error must be of the type that "cannot be repaired" and therefore needs no objection. *See Capellen v. Capellen*, 888 S.W.2d 539, 547 (Tex. App.—El Paso 1994, writ denied). The claimant bears the burden to "explain how any comments made by the trial judge were incurable or would excuse" the claimant's "failure to preserve error." *Dow Chem. Co.*, 46 S.W.3d at 241.

Here, the record reflects that the trial judge explained to the venire at the beginning of voir dire that this was a civil commitment proceeding and that it would be the jury's responsibility to determine whether the State met its burden of proving that Stuteville was a "sexually violent predator" as defined by the SVP Act. The trial judge also informed the venire that he was the "only Judge in the state of Texas" that presides over this "very serious" type of case and that he understood that they may have a strong reaction to the types of issues that often come up in these cases, and that he needed to make sure that they would be able to set their personal feelings aside and decide the case based on the evidence presented. After briefly discussing the SVP Act and the burden of proof, the trial judge further stated:

> I need to talk to you about one other area, and that is in these trials oftentimes—and I don't know what we're talking about in this case because the Judge gets the file put on his desk in the morning when I show up here to court. Most people think the Judge reviews the file,

but they just send me stacks of them. And they say this is the one you're trying today. So all that's in my file is the State saying that a Respondent is a sexually violent predator and the Respondent is saying: No, I'm not. That's essentially what's in my file. But oftentimes, having tried this case many, many times, we talk about issues of pedophilia, we talk about issues of homosexuality, we talk about issues of incest. Okay? And I want to make sure that—and I'll tell you, especially the issue of pedophilia—just trying to put a little sugar here on this case for you—if you're fortunate enough to make the jury, you know, everything that a person knows about sexual offenses, unless you have some training in this area, is something you were told by somebody or something you probably read in a magazine or on the Internet. And we all know the Internet is never wrong. Right? If you're lucky enough to get to serve on this jury you can expect to hear from at least one doctor explaining to you about these issues and explaining to you what these issues mean. I'm not sure if any of these issues are coming up in this trial. But if you're lucky enough to make it on the jury it's an educational experience for you. You don't get any college credit for it, but you do become a little smarter, hopefully, through this whole process.

Stuteville did not object to the trial court's comments or request a curative instruction.

On appeal, Stuteville argues that he had no obligation to object to these comments because the resulting harm was incurable by instruction. Specifically, relying upon *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003), Stuteville contends that "[o]nce the trial court made clear its support for the state-expert testimony, no instruction that the venire should disregard the court's opinion would have been effective." First, *Brown* is inapposite and does not support such a proposition. Unlike in the present appeal, the issue of preservation was not before the appellate court in *Brown* because the defendant made a contemporaneous

31

objection to the trial court's comments in that case. *Id.* The relevant issue in *Brown* was whether the trial judge's comments were improper, not whether they were *incurable*.

Second, Stuteville has not explained how the trial court's comments were so "blatantly and obviously prejudicial" that any confusion or damage caused by the comments could not be overcome by a curative instruction. *See Capellen*, 888 S.W.2d at 547. Accordingly, we hold Stuteville has not demonstrated that the trial judge's alleged improper comments were incurable. *See Dow Chem. Co.*, 46 S.W.3d at 241. We further hold that Stuteville has failed to preserve this complaint for our review because he did not object or request a curative instruction.

We overrule Stuteville's seventh issue.

## Conclusion

We affirm the trial court's judgment and order of commitment.


Russell Lloyd
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.