

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00018-CV

_____

IN RE: THE COMMITMENT OF STEVEN A. HAYES

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. 17-2140-362

Before Sudderth, C.J.; Pittman and Birdwell, JJ.
Opinion by Justice Pittman

## MEMORANDUM OPINION

The trial court ordered that Appellant Steven A. Hayes be civilly committed under Texas Health and Safety Code Section 841.081. *See* Tex. Health & Safety Code Ann. § 841.081 (West 2017). In two issues, Hayes contends that the evidence is legally and factually insufficient to support the trial court's judgment and that the judgment violates due process. We affirm.

## SVP CIVIL COMMITMENT PROCEEDINGS

"Enacted in 1999 and codified in Texas Health and Safety Code chapter 841, the Civil Commitment of Sexually Violent Predators Act enumerates a 'civil commitment procedure for the long-term supervision and treatment of sexually violent predators' (SVPs) upon completion of their criminal sentence." *In re State*, No. 16-0829, 2018 WL 1974361, at *1 (Tex. Apr. 27, 2018) (quoting Tex. Health & Safety Code Ann. § 841.001 (West 2017) and outlining different parts of Chapter 841). The procedures in Chapter 841 are triggered by the anticipated release of a person who (1) is serving a sentence for a sexually violent offense described in Chapter 841 and (2) may be a repeat sexually violent offender. Tex. Health & Safety Code Ann. § 841.021(a) (West 2017). Based on the outcomes of various assessments required by Chapter 841, the State may file a petition under that chapter alleging that the person is an SVP. *Id.* §§ 841.022, 841.023(a), 841.041(a) (West 2017). The factfinder at trial must determine whether, beyond a reasonable doubt, the person is an SVP. *Id.* § 841.062(a) (West 2017). If the matter is tried to a jury, the jury's determination must

2

be unanimous. *Id.* § 841.062(b). If the factfinder determines that the person is an SVP, the court must commit the person for treatment and supervision. *Id.* § 841.081(a).

For purposes of Chapter 841, an SVP is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003 (West 2017). The chapter defines both "behavioral abnormality" and "a predatory act." A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West 2017). A "predatory act" is "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

## STANDARD OF REVIEW

We review SVP civil commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see In re Commitment of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no. pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Stuteville*, 463 S.W.3d at 551.

When reviewing the factual sufficiency of the evidence to support the civil commitment order, we weigh all the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Dever*, 521 S.W.3d at 86 (quoting *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied)). We reverse only if, after weighing the evidence, we determine that the risk of an injustice remains too great to allow the verdict to stand. *Stuteville*, 463 S.W.3d at 552; *see also Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010).

## PROCEDURAL HISTORY

Hayes has three convictions for sexual offenses:

- a 1989 conviction in Kansas for the offense of indecent liberties with a child, the elements of which are substantially like the offense of indecency with a child under Texas Penal Code Section 21.11(a)(1), Tex. Penal Code Ann. § 21.11(a)(1) (West Supp. 2017);

- a 1997 conviction in Missouri for the offense of first degree statutory sodomy involving a victim under fourteen years old, which has elements like the offense of sexual assault of a child under the age of fourteen under Texas Penal Code Section 22.011, Tex. Penal Code Ann. § 22.011 (West Supp. 2017); and

- a 2009 conviction in Texas for the offense of aggravated sexual assault under Texas Penal Code Section 22.021, Tex. Penal Code Ann. § 22.021 (West Supp. 2017).

Hayes also has a 2009 Texas conviction for the offense of violation of the sex offender registration. *See* Tex. Code Crim. Pro. Ann. art. 62.102 (West 2018).

4

The 1989 conviction resulted from Hayes's acts with a fourteen-year-old daughter of his friend. Hayes was twenty-nine at the time. Hayes stated in a deposition for this case that he would have proudly fathered her children. Hayes claimed that the girl's parents were aware of and condoned the relationship, although it was the child's mother who reported Hayes to the police. Hayes received probation and outpatient sex offender treatment for the offense. The 1997 conviction arose out of Hayes's repeated sexual abuse of his eight-year-old stepdaughter over a period of several months. Hayes was around thirty-seven at the time. Sentenced to five years, Hayes served approximately three-and-a-half years before receiving parole. Hayes had sex offender treatment again for this conviction. The Texas conviction arose from Hayes's having sex with a twelve-year-old-girl after his girlfriend gave the girl a medication with a sedating effect. Hayes was forty-seven at the time. Hayes was sentenced to ten years' confinement for that offense.

The State filed a petition on March 14, 2017, alleging that Hayes was an SVP who would completely discharge his sentence on December 2, 2018, but could be released earlier upon entry into the Texas Department of Criminal Justice's sex offender treatment program. At trial, the State presented expert testimony from Dr. Timothy Proctor, a psychologist with a specialty in forensic psychology. The State also called Hayes as a witness. Hayes did not present any expert testimony or any other witness in his defense. Hayes acknowledged committing the offenses for which he received his first two convictions, but he denied committing the Texas offense.

The jury found beyond a reasonable doubt that Hayes is an SVP. The trial court accordingly ordered that Hayes be civilly committed. Hayes filed a motion for new trial, which the trial court denied. Hayes now appeals.

## DISCUSSION

### I. The State Did Not Have to Separately Prove Hayes's "Primary Purpose."

In his first issue, Hayes argues that the evidence is neither legally nor factually sufficient to prove beyond a reasonable doubt that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of violence because the State presented no evidence that he would commit an act directed toward individuals "for the primary purpose of victimization" and thus no evidence that he is likely to engage in predatory behavior. *See* Tex. Health & Safety Code Ann. § 841.003 (defining SVP to mean someone whose behavioral abnormality makes the person likely to engage in a predatory act of sexual violence). Hayes contends that the phrase "was not even mentioned except during opening and closing statements and in Hayes'[s] argument asking for a directed verdict." He argues that the State "utterly failed to address" this "legislatively mandated statutory definition" of an SVP. And he contends that "[b]y ignoring the need to establish Hayes'[s] primary purpose, the prosecution is presuming that the legislature did not intend its definition of 'predatory act' to focus the reach of the SVP law and such a presumption is not permissible."

6

We reject Hayes's arguments for two reasons. *First*, Hayes mischaracterizes the evidence at trial. The State's attorney specifically asked Dr. Proctor, toward the end of his testimony, to "summarize the makeup of [Hayes's] behavioral abnormality that makes him likely to engage in predatory acts of sexual violence." Dr. Proctor then talked about the factors that he already referenced in his testimony that were relevant to that question. Thus, contrary to Hayes's argument, the State elicited direct testimony about Hayes's likelihood to engage in predatory behavior.

*Second*, and more importantly, Hayes misunderstands the State's burden. The Houston 14th Court of Appeals addressed this issue last year. *See In re Commitment of Harris*, 541 S.W.3d 322, 328–29 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Houston court considered the Texas Supreme Court's opinion in *In re Commitment of Bohannan*, which reversed a Beaumont Court of Appeals decision bisecting the definition of behavioral abnormality into two separate, required components: "[1] an acquired or congenital condition, and [2] a predisposition to commit a sexually violent offense." 388 S.W.3d 296, 302 (Tex. 2012). The Supreme Court explained that this bisecting misconstrued the statute because "[t]he required condition *is* the predisposition." *Id.* at 302. Thus,

> [t]he definition [of behavioral abnormality] might more clearly be written:
>
> > "Behavioral abnormality" means a congenital or acquired predisposition, due to one's emotional or volitional capacity, to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.

The condition and predisposition cannot be separate things.

*Id.* at 303.

Based on that opinion, the Houston Court of Appeals held in *Harris* that "evidence of a person's predisposition to commit a sexually violent offense to the extent that he becomes a menace to the health and safety of another person is sufficient to show that the person is likely to engage in a predatory act of sexual violence for the primary purpose of victimization." *Harris*, 541 S.W.3d at 329; *see also In re Commitment of Sternadel*, No. 14-17-00051-CV, 2018 WL 1802151, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2018, no pet.) (mem. op.) ("That an act would be 'for the primary purpose of victimization' is not a separate element that must be proved."); *In re Commitment of Colantuono*, 536 S.W.3d 549, 558 (Tex. App.—San Antonio 2017, no pet.) ("[I]mplicit in a finding that a person suffers from a behavioral abnormality is a conclusion that the person is likely to engage in a predatory act of sexual violence for the primary purpose of victimization"); *In re Commitment of Ramirez*, No. 09-13-00176-CV, 2013 WL 5658597, at *2 (Tex. App.—Beaumont 2013, no pet.) (mem. op.) (same). We agree. Accordingly, the State did not need to specifically bring up and address the "primary purpose" definition of an SVP to prove that Hayes is an SVP. The evidence was sufficient if it showed that Hayes is predisposed to commit a sexually violent offense, to the extent that he is a menace to the health and safety of another person. *See Bohannan*, 388 S.W.3d at 303; *Harris*, 541 S.W.3d at 329. We overrule Hayes's first issue.

8

## II. The Civil Commitment Order Does Not Violate Due Process.

In his second issue, Hayes argues that his due process rights were violated by the civil commitment because (1) there was no evidence showing he has a lack of control and (2) ample evidence that the civil commitment was pursued for a retributive purpose.

### A. The State Presented Evidence that Hayes Lacks Control.

Citing *Kansas v. Crane*, Hayes argues that "the Constitution does not permit commitment of a dangerous sexual offender without any lack of control determination" and that "[t]he prosecution presented no evidence showing that Hayes has now, or ever did, exhibit a lack of control." 534 U.S. 407, 412–13, 122 S. Ct. 867, 870 (2002) (stating that the federal constitution does not permit commitment of a sexual offender without "proof of serious difficulty in controlling behavior"). But the definition of "behavioral abnormality" includes the concept of an inability to control one's behavior. *Dever*, 521 S.W.3d at 87; *In re Commitment of Browning*, 113 S.W.3d 851, 863 (Tex. App.—Austin 2003, pet. denied). Thus, the jury's finding that Hayes is an SVP includes a finding that he has serious difficulty controlling his behavior.

#### 1. The State Presented Evidence Specifically About Control.

The State provided testimony directly addressing the question of whether Hayes lacks control over his behavior. Hayes himself acknowledged at trial that when he forced his eight-year-old stepdaughter to perform sex acts on him over a period of months, he knew that what he was doing was wrong but did it anyway. Further, when

Dr. Proctor explained his understanding of the legal term "behavioral abnormality" and its statutory definitions, he discussed the "predisposes" part of the definition of "behavioral abnormality." He stated that, in his understanding of the "predisposes" language, "[y]ou're trying to understand whether or not they have this condition" "**that affects their** feelings, emotions, **ability to control their behavior**." [Emphasis added.] Thus, the jury was told that in forming his opinion about whether Hayes has a predisposition to commit a sexually violent offense to the extent that he is a menace to the health and safety of others, Dr. Proctor considered whether Hayes has an ability to control his behavior and concluded that he did not. Dr. Proctor then testified multiple times that in evaluating Hayes's risk of reoffending, one of Hayes's risk factors is a tendency to be impulsive.

### 2. Hayes's Persistence After Punishment Further Shows a Lack of Control.

As further evidence supporting a finding that Hayes has serious difficulty in controlling his behavior, Dr. Proctor pointed out that Hayes reoffended even after being convicted twice—and even after twice receiving sex offender treatment. Dr. Proctor stated that this "persistence after punishment" is "one of the strongest risk factors" for reoffending. "So if somebody commits a sexual offense and then gets punished for it, you know, in this case gets put on probation, gets sex offender treatment, and then even after that, they re-offend, that's really concerning." He explained, "Lots of people charged with sex offenses, convicted of sex offenses never

10

go on to re-offend. There's a group though that persist in it. And that is a really concerning factor when you see someone, even after they're, you know, caught, punished, treated, then re-offending." Here, Hayes not only reoffended after being convicted and receiving sex offender treatment, he reoffended again after his second conviction and after again participating in sex offender treatment.

Hayes argues that this "persistence after punishment" risk factor does not show a lack of control in this case because his previous convictions resulted in slight punishment, and "[t]he concept of deterrence . . . does not work if the disabilities of conviction are lenient relative to the offense." He contends that given the slight punishment he received, "it is highly likely that Hayes'[s] third offense resulted less from a lack of control over pedophilic urges than from the risk/benefit calculation of a career criminal." In making this argument, Hayes asks us to make an inference contrary to the jury's verdict.[1] Hayes cites no legal authority to support this inference that because he received light punishment for his first two offenses, his twice reoffending cannot support Dr. Proctor's opinion and does not show a lack of control. And no expert at trial testified to that effect. Hayes himself admitted that his second conviction resulted from behavior that he knew at the time was wrong—and

---

[1]In reviewing Hayes's legal sufficiency challenge, even if some evidence supported this contrary inference (and none does), we could give no credence to it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005) (stating that "courts reviewing all the evidence in a light favorable to the verdict must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review").

that occurred after he had already received sex offender treatment. And Hayes ignores evidence that before he committed the Texas offense, he was required to register as a sex offender, which resulted in his being harassed and having a difficult time finding a job. While his prison sentence for the Missouri offense may not have been long, he felt the effects of the conviction after his release, and yet he still reoffended. We overrule Hayes's argument that Dr. Proctor's "persistence after punishment" testimony is inapplicable to him.

### 3. Dr. Proctor's Analyses Further Support the Jury's Finding of Lack of Control.

Hayes next argues that "[e]ven the actuarial measurements support [a] finding that Hayes does not fit among that 'small but extremely dangerous group of sexually violent predators' for whom civil commitment was designed." He argues that the Static-99R score Dr. Proctor gave him places Hayes's risk of reoffending at "between 4.1 and 7.5 percent within five years."

Hayes misrepresents Dr. Proctor's testimony in two ways. *First*, he misrepresents Doctor Proctor's testimony about his Static-99R scores. *Second*, in his focus on part of the Static-99R evidence, he fails to mention the other measures in Dr. Proctor's testimony relevant to his risk of reoffending.

The Static-99R addresses a person's risk for reoffending. As Dr. Proctor explained, the person running the Static-99R analysis determines a score for an individual based on certain risk factors, and the Static-99R provides tables "where you

can look at for each score what individuals with that score in the research sample, what their recidivism rate was." The test's authors provide two sets of tables of recidivism rates for converting the test score to a recidivism rate for the individual being scored: one set for routine offenders and another for "high risk/high needs" offenders.

In scoring Hayes, Dr. Proctor looked at offenses for which Hayes had been accused but not convicted and evaluated how much weight to give those offenses in determining which of the Static-99R risk factors applied to Hayes. For example, at the time that Hayes was investigated for abusing his stepdaughter, he admitted to police that he had also offended against his ten-year-old stepson[2] and admitted to exposing himself to other children in the neighborhood. Dr. Proctor "put a lot of weight" on the allegations about the stepson "because that was something that [Hayes] admitted to law enforcement that he had done." He also considered Hayes pulling down the pants of a child in the neighborhood around the same time period and exposing himself to children at a playground; Hayes admitted at the time (but more recently denied) to exposing himself and to pulling down the child's pants (though he claims he did so only because at the time he "thought it was funny"). But

---

[2]Hayes denies admitting to this offense and testified that the police must have misunderstood. He testified, "That may have been the way the statements I made regarding that were taken, that I admitted to—that I admitted to using my stepson's hand to masturbate me. But I believe what I actually said was that that occurred to me when I was a child of about his age and using him directly as an example."

Dr. Proctor put less weight on other contemporaneous accusations of children in the neighborhood because Hayes was not charged with those offenses, Hayes did not admit to them, and there were no witnesses.[3] Dr. Proctor also considered a nonsexual violent offense for which Hayes spent four days in jail, but for which Dr. Proctor could not determine if Hayes had been convicted. Dr. Proctor scored the Static-99R two different ways, once including this nonsexual offense and once not including it.

Dr. Proctor stated that Hayes's score was "complicated" but "somewhere between a 3 and a 6."[4] Based on the data on routine offenders, a score of 3 gives Hayes a risk of reoffending of 7.9 percent within five years. For a score of 6, he has a 20.5 percent risk at five years. Dr. Proctor considers Hayes to have a high risk of reoffending. Looking at the high risk/high needs tables, a score of 3 gives Hayes a 14 percent risk at 5 years and a 22.9 percent risk at 10 years. A score of 6 gives Hayes a risk of 25.7 percent at 5 years and 37.3 percent at 10 years. The numbers that Hayes references in his brief come from a separate study by different researchers—not the

---

[3]The trial judge admonished the jury to not consider Dr. Proctor's testimony about these offenses for their truth and to consider them only as a basis for Dr. Proctor's opinion.

[4]Hayes's attorney did not follow up to ask why Dr. Proctor considered the score to be complicated or why he gave a range instead of one specific score. Hayes describes the score range as "odd" given that the Static-99R "examines 'static,' i.e., unchanging, factors and comes with clear scoring guidelines." Dr. Proctor's score is not "odd" when considered in the context of his testimony. For example, Dr. Proctor explained that one of the reasons for the score range is that he scored the test once to include an alleged nonsexual offense and once to exclude it because the record was not clear about whether Hayes had been found guilty of that offense.

14

Static-99R authors—looking at Texas offenders. Looking at all of Dr. Proctor's testimony, the Static-99R gives Hayes up to a 25.7 percent risk of reoffending in five years, not a maximum of 7.5 percent as argued by Hayes. Hayes does not discuss in his brief the results from the Static-99R tables.

Dr. Proctor also testified about other analyses he conducted. The Static-99R is a purely actuarial measure.[5] In forming his opinion, Dr. Proctor used a clinically-adjusted actuarial methodology. That is, he looked not only at purely actuarial measures like the Static-99R, but at "the totality of the information in the record, not just about risk factors, but about potential diagnoses," "information regarding prior treatment attempts," "[i]nformation regarding substance use," and "[i]nformation

[5]Dr. Proctor explained "actuarial measure" to the jury:

One of the ways we rate someone and look at their risks of sexual offense re-offending is something that's called an actuarial measure. And you create an actuarial measure through research where you take a particular issue, like maybe you want to look at someone's risk for getting into a car accident. And so you study people who have gotten into a car accident, large groups of people. And you look at what differentiates those who get into a car accident versus those that don't. And you would find things like being young. You know, younger people tend to get into more car accidents. Being under the influence of some kind of substance, et cetera. And so the research would pull out these factors. And then you could create a list of the research-based factors and see how many of those a person has to help give you an idea of the person, this person you're talking to, their risk of re-offending. In this case, with sexual offending, it's the same process. Authors of these actuarials have studied thousands of individuals who have a history of sexual offending to see which ones re-offend and look at what kinds of factors tend to be present in those who offend again versus those who don't.

15

regarding issues with psychological stability." Besides the Static-99R, Dr. Proctor also used the Risk for Sexual Violence Protocol, which is a "list of research-based risk factors that you consider qualitatively," and the Hare Psychopathy Checklist–Revised, which measures psychopathy. Some of the risk factors that Dr. Proctor determined applied to Hayes were:

- having "a lot of" psychopathic traits;

- sexual deviance[6]—specifically (1) a history of offending against nonconsenting persons (both that his victims are children and that he has used force) and (2) evidence of a pedophilic disorder, which is "known to be a lifelong disorder";

- Hayes's failure to understand his triggers—for example, Hayes's comment at his deposition for this case that he would have proudly fathered the 14-year-old's children indicates lack of insight—"he still doesn't get the problem with a sexual relationship with a 14-year-old";

- That he has had unrelated victims: "one of the really strong research findings about sex offenders is that those who offend outside of the family . . . have even a higher risk than those who have offended against people within their family. One thought of the reason for that is there's a larger victim pool";

- "chronicity of sexual violence": the fact that Hayes offended against his stepdaughter "over an extended period of time. I mean, multiple times, different locations, different states even. So that speaks to a chronic ingrained, repetitive pattern";

- the presence of a male victim in Hayes's stepson and the boy whose pants he pulled down: "what has been found over and over is those who have any history of offending against a male victim tend to re-offend at a higher level";

---

[6]Dr. Proctor stated that this is the most significant risk factor for Hayes.

16

- the diversity of sexual violence Hayes has perpetrated in that his victims, while all children, were of varying age and in that he engaged in different kinds of sexual contact with the children;

- the fact that Hayes offended again at 47, past the age at which the rate of criminal offending, including sexual offending, tends to decrease; and

- Hayes's history of substance abuse, because substance abuse can lower inhibitions.

Much of this testimony—Hayes's risk of lowering his inhibitions through substances abuse, his lack of understanding of his triggers, his abusing his stepdaughter over an extended period despite knowing it was wrong, his having a pedophilic disorder, his continuing to offend past the age when rates of offending usually decrease—is directly relevant to Hayes's ability to control himself. Hayes's brief does not address this other risk factor testimony. Hayes did not produce expert testimony to counter Dr. Proctor's testimony. Hayes produced no witnesses other than himself. The jury was entitled to find Dr. Proctor's expert testimony credible and to find Hayes's testimony not credible. *See Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018); *Pilkington v. Kornell*, 822 S.W.2d 223, 230 (Tex. App.—Dallas 1991, writ denied). Accordingly, the evidence was legally and factually sufficient to support a finding that Hayes lacks control.

## B. The Evidence Does Not Show Retaliation.

Finally, Hayes challenges the reason the State brought this proceeding in the first place. He argues that "[e]xamining the lack of evidentiary showing that Hayes has difficulty controlling himself, combined with the light punishments he received, it

is apparent that the real reason for the prosecution's pursuit of his civil commitment is retribution and compensation for the punishment that he failed to receive from the criminal justice system." In making this argument, Hayes makes quite an inferential leap. We decline to jump with him. The State brought this proceeding after Hayes was assessed as a possible SVP in accordance with Chapter 841 and the results of that assessment were forwarded to the prosecutor's office in compliance with that chapter. *See* Tex. Health & Safety Code Ann. §§ 841.022, 841.023(a), 841.041(a). The State produced sufficient evidence to support a finding that Hayes is an SVP. There is no evidence to support Hayes's conclusion that the State brought this proceeding only to further punish him.

Based on the evidence at trial, we hold that any rational trier of fact could have found the statutory elements required for commitment beyond a reasonable doubt. *See Stuteville*, 463 S.W.3d at 551. Further, the risk of an injustice is not too great to allow the verdict to stand. *Id.* at 552. Thus, the evidence is legally and factually sufficient to support the trial court's judgment. We overrule Hayes's second issue.

## **CONCLUSION**

Having overruled Hayes's two issues, we affirm the trial court's judgment.

18

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered:  September 27, 2018