**AFFIRM; and Opinion Filed July 11, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-17-00516-CV

_____

## IN RE THE COMMITMENT OF RICKEY LYNN SAWYER

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CV1670004**

# MEMORANDUM OPINION

Before Justices Francis, Brown, and Stoddart
Opinion by Justice Brown

Rickey Lynn Sawyer appeals the trial court's judgment and order of civil commitment following a jury's determination that he is a sexually violent predator as defined in the health and safety code. In three issues, Sawyer contends the trial court erred in admitting hearsay evidence of a nontestifying expert's evaluation of him and challenges the legal and factual sufficiency of the evidence. We affirm the trial court's judgment and order of commitment.

### BACKGROUND

In enacting the Civil Commitment of Sexually Violent Predators Act, the Texas Legislature found that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2010). It further found that a civil commitment procedure for the long-term supervision and treatment of sexually violent

predators is necessary and in the interest of the state. *Id.* To warrant an individual's commitment as a sexually violent predator, the State is required to prove beyond a reasonable doubt that the person is (1) a "repeat sexually violent offender," and (2) suffers from "a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* §§ 841.003(a), 841.062(a) (West 2010). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id.* § 841.003(b); *see also id.* § 841.002(8). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). A "predatory act" is one that is "directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

In March 2016, the State of Texas filed a petition alleging that Sawyer is a sexually violent predator as defined by section 841.003 of the health and safety code. The State alleged Sawyer had previously been convicted of three sexually violent offenses in Denton and Dallas counties. The State further alleged that an expert had performed a clinical assessment of Sawyer and found he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. At the time the petition was filed, Sawyer was incarcerated, but was scheduled to be released by September 1, 2016. The State sought to have Sawyer committed for treatment and supervision.

At trial, pen packets reflecting Sawyer's convictions for three sexually violent offenses were admitted into evidence. In 1987, Sawyer was convicted of indecency with a child and sentenced to two years' confinement. In 1991, Sawyer was convicted of two counts of aggravated sexual assault of a child and received concurrent fifty-year sentences. Sawyer was twenty-four

years' old when he went to prison in 1991 and at the time of trial had been in prison for the past twenty-five years.

The State called two witnesses, Dr. Christine Reed, a psychologist, and Sawyer. The Dallas County District Attorney's Office asked Dr. Reed to evaluate whether Sawyer had a behavioral abnormality. In performing these types of evaluations, Dr. Reed reviews various written records, including mental health and medical records, offense reports, and prison records. Sometimes the documents from prison include an evaluation performed by another psychologist or psychiatrist. Dr. Reed also meets with the person being evaluated and gathers information through a clinical interview. She then looks at all the data and forms an opinion.

In this case, a previous evaluation had been performed in prison by Dr. Jorge Varela.[1] Dr. Reed testified that she reviewed and relied upon the information contained in Dr. Varela's report. Dr. Varela determined that Sawyer had a behavioral abnormality. Dr. Reed's opinion was consistent with Dr. Varela's; Dr. Reed formed the opinion that Sawyer suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Reed testified that when determining whether a person has a behavioral abnormality, she looks for a number of risk factors and certain mental health issues. In her mental health evaluation, Dr. Reed determined that Sawyer suffers from pedophilic disorder, which she described as intense sexual interest, fantasies, or behavior with pre-pubescent children. Someone who has pedophilic disorder is also considered a pedophile. Pedophilia is a chronic, or lifelong, condition. Pedophiles may not always act on their attraction to pre-pubescent children, but it will always be there. Suffering from pedophilic disorder in and of itself does not mean Sawyer has a behavioral abnormality. It is just one part of the evaluation, but can be a significant part. According to Dr. Reed, in this case it was significant.

---

[1] The court reporter spelled Varela's name phonetically as "Barella."

Turning to the risk factors, Dr. Reed testified that she looks for sexual deviancy, anti-social orientation, which means engaging in criminal behavior, and the presence of psychopathy. Sawyer's history of engaging in acts with pre-pubescent children is considered deviant. Sawyer also had a history of anti-social orientation. Sawyer's criminal behavior began when he was a teenager. He was first arrested when he was about seventeen, but before that he engaged in "adolescent-types of criminal behavior that he either wasn't caught for or wasn't charged with." Sawyer stole a car at some point. When he was younger, he stole cigarettes and sold marijuana to classmates. Further, he broke the law by engaging in deviant acts. Sawyer had a history of substance abuse from a young age that plays into anti-social orientation, as well as a history of very impulsive acts. Dr. Reed also considered Sawyer's overall history, including employment history and relationship history. Sawyer reported no significant romantic relationships with an appropriate age partner that lasted for any length of time, which was a risk factor.

Dr. Reed also looked at protective factors, things that mitigate against the risk factors. The main protective factor is participation in a sex offender treatment program. Sawyer completed such a program, but that does not trump all risk factors and people who complete sex therapy can still reoffend. Sawyer is a sexual recidivist, meaning he had committed a sexual offense more than once.

Dr. Reed interviewed Sawyer in prison in June 2016 for about three hours. They discussed his sexual offenses. The first conviction, for indecency with a child, arose out of Sawyer's 1986 conduct with W., the six or seven-year-old son of Sawyer's co-worker. Sawyer told Dr. Reed he fondled W.'s genitals over his clothes while he was babysitting the boy. Sawyer said he had done so more than ten times. Sawyer told other evaluators it happened twenty-five to thirty times. He also reported it had happened only once. Dr. Reed identified several risk factors in this offense, including sexual deviance.

Prior to W., Sawyer committed sexual acts with other young children. Sawyer told Dr. Reed he began in 1983 or 1984 with one of his nephews, J. At that time, J. was about two years' old, and Sawyer was sixteen or seventeen. Sawyer told Dr. Reed that he "kind of stumble[d] upon" J. in Sawyer's bedroom one night as Sawyer came in through the window. Sawyer kissed J. and indicated to Dr. Reed that the boy initiated the contact. He did not describe sexual contact to Dr. Reed, but had to other evaluators. Dr. Reed's understanding was that Sawyer had sexual contact with J. that night. Sawyer was never charged for that incident. Sawyer's statements about the contact suggested it was a relationship, a kind of mutual sexual contact. Dr. Reed said this was a significant concern and a risk factor. Dr. Reed also testified it was of significant concern that Sawyer later put himself in the position of being alone with W. when he already had a pattern of engaging in these behaviors with pre-pubescent children.

Sawyer was ultimately convicted of the aggravated sexual assault of J. and another nephew for a 1991 incident. Sawyer and the boys, J. and T., were asleep in the living room of Sawyer's parents' house, as was the boys' father, who was Sawyer's brother. Sawyer woke up J., who was about nine at the time, fondled him, and performed oral sex on him. Then he woke up T., who was younger than J., and did the same to him. The risk factors in this behavior included sexual deviancy and the fact that the boys' father was in the room at the time. Another risk factor was the fact that Sawyer reoffended after having gone to prison for the offense against W. Dr. Reed testified Sawyer knew his behavior was wrong, but did not characterize it as a sexual attraction. He attributed the behavior to his being bored or impulsive. Sawyer did not think he was a pedophile.

Dr. Reed performed several tests on Sawyer; these sorts of standardized tests are given whenever someone is being evaluated for a behavioral abnormality. One was the Hare Psychopathy Checklist, also known as the PCL-R. A psychopath is someone that typically lacks

conscience. Psychopaths do not have a lot of empathy for others; they see them as objects. Dr. Reed testified that Sawyer displays traits of psychopathy, but did not suffer from psychopathy. Dr. Reed also used an actuarial instrument called the STATIC-99R that measures for risk of reoffense for sexual offenses. The test took into account various factors, including prior nonsexually violent convictions and prior sex offenses. It considered such things as whether the sex offense victims were strangers and whether they were male. Dr. Reed scored Sawyer conservatively. Sawyer scored a 3, which indicated he was at a low to moderate risk for reoffense. To make sure she had a fully formed opinion, Dr. Reed did another test called the SVR-20. It did not provide anything new, but was more of a compilation of various risk factors. Dr. Reed testified she believed Dr. Varela performed the PCL-R and the STATIC-99.

Dr. Reed then testified about Sawyer's institutional adjustment, which refers to how a person behaves in the prison system. Sawyer had fifty-seven total infractions, twenty-one of which were major infractions. None were of a sexual nature, but he had a hard time following the rules, even in a structured setting. Sawyer completed a nine-month sex offender treatment program while in prison. He entered the program in December 2015. The treatment records indicated Sawyer lacked insight or understanding of why he did what he did and how not to do it again. Dr. Reed herself also noticed a lack of insight. Sawyer repeatedly said to Dr. Reed that he engaged in the behavior because he was bored or stressed. He denied that he is sexually attracted to children. Dr. Reed indicated that it is hard for someone to make a plan not to repeat behavior if he does not acknowledge a key component of why he engaged in the behavior.

Dr. Reed testified that in her opinion Sawyer suffers from a behavioral abnormality that makes him likely to engage in the predatory act of sexual violence. According to Dr. Reed, Sawyer's risk level to commit a predatory act of sexual violence is that of the small but dangerous population of sex offenders the law in question was meant to address. Dr. Reed stated she believed

he had the behavioral abnormality and was likely to reoffend. She stated that opinion was consistent with Dr. Varela's.

On cross-examination, Dr. Reed testified that Sawyer had not completed treatment at the time she interviewed him. She did not meet with him again after he competed the program. In addition, Dr. Varela met with Sawyer prior to sex offender treatment. Dr. Reed testified that Sawyer got a score of "Good" for his overall participation in the treatment program.

Defense counsel asked about Dr. Varela's evaluation. Since the time Dr. Varela evaluated Sawyer, there had been thousands of pages of records in the case. Dr. Reed did not know if Dr. Varela had a chance to review those records, which included things such as notes from sex offender treatment and Sawyer's completion certificate. Defense counsel asked Dr. Reed about differences in their scoring of the STATIC-99R test.

Sawyer was granted parole and Dr. Reed had reviewed the records from the parole process. The Board of Pardons and Paroles performed a risk assessment on Sawyer. Sawyer passed the risk assessment and the Board found that he could be released as long as he completed the sex offender treatment program. The parole board does not do a behavioral abnormality assessment.

Sawyer testified about the offenses he committed against W., J., and T. He could not remember how many times he fondled W. He did not remember telling Dr. Varela he did so twenty-five times over three months. He believed he remembered telling Dr. Reed he did so more than ten times. Sawyer was sentenced to two years in prison in 1987 for the offense against W. At the time he was on probation for the felony of "accessory to a car theft." He served all but about three months of his sentence for indecency with a child. He was out for about three months and then went back to prison on the car theft for almost two years. In 1991, he picked back up with J. and started doing things with T. Sawyer testified about the incident with J. and T. at his parents' house. He indicated it happened because he was "stressed out, bored, feeling down about

myself." That night, Sawyer knew he had to get some kind of help and he told J. "to tell." Sawyer testified that he did not remember how many times he performed sex acts on T. When asked if he recalled telling Dr. Varela about thirty instances with T., Sawyer pleaded the fifth. He continued to plead the fifth when asked other questions about his conduct with T. and J. He did not remember telling Dr. Varela that he performed oral sex and digitally penetrated J.'s anus once or twice a month when J. was between the ages of two to nine. He denied telling Dr. Varela that he fell in love with J.

Sawyer denied that he was sexually attracted to children and denied telling Dr. Varela otherwise. He did not agree with Dr. Varela's and Dr. Reed's determination that he was a pedophile. He acted out when he was bored or stressed out. Sawyer stated he asked for and received sex offender treatment in 1991 through a program started by the prison chaplain. He did not receive treatment again until 2015 when he was within two years of going home. He testified he was put in the nine-month program instead of a longer one because he was considered to be at a low risk for reoffending. Sawyer thought he needed to continue sex offender therapy. He acknowledged there was a possibility he could reoffend.

Sawyer also testified about his efforts to better himself while in prison. He got his GED and participated in vocational and college courses. The stipulations of his parole include registering as a sex offender, having no contact with the victims, and not abusing substances. He would be on parole for twenty-four years and would have to have sex offender treatment for that time. The sex offender treatment had given him the tools to prevent relapse. He also testified about his support system, which included his mother, deacon, and friends.

The jury found beyond a reasonable doubt that Sawyer is a sexually violent predator. Based on this finding, the trial court's judgment decrees that Sawyer is a sexually violent predator as

defined in section 841.003 and orders him civilly committed for treatment and supervision. This appeal followed.

EVIDENTIARY ISSUE

In his first issue, Sawyer contends the trial court erred in admitting hearsay testimony from Dr. Varela, the nontestifying expert. During Dr. Reed's testimony, Sawyer raised a hearsay objection to her testimony about Dr. Varela's report. Sawyer also raised rule 403 and objected on grounds that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. After an off-the-record bench conference, the trial court overruled the objections and granted Sawyer's request for running objections. At that time, the judge orally advised the jury:

> As far as the Jury is concerned hearsay is a statement other than one made by the Declarant, the person making the statement while testifying at trial, offered in evidence to prove the truth of the matter asserted.
>
> As a general rule hearsay is not admissible. However, certain hearsay information contained in records reviewed and relied upon by experts will be presented to you through the experts' testimony. That hearsay or such hearsay was reviewed by the expert before being present[ed] to you and is being presented to you only for the purpose of showing the basis of the expert's opinion and to afford you the opportunity to decide the weight and credibility to be given to that opinion.
>
> Hearsay cannot be considered for the evidence or the truth of the matter asserted.

The court's charge contained a similar instruction:

> Hearsay is a statement that: 1) the declarant does not make while testifying at the current trial or hearing and 2) a party offers in evidence to prove the truth of the matter asserted in the statement. Hearsay normally is not admissible. In this case, certain hearsay information contained in records reviewed by an expert or experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

We review a trial court's evidentiary rulings for abuse of discretion. *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *7 (Tex. App.—Dallas Feb. 20, 2018, no pet.)

(mem. op.). A trial court abuses its discretion when it acts without regard to guiding rules or principles. *Id.*

The Ninth District Court of Appeals, which until recently decided the vast majority of appeals involving the civil commitment of sexually violent predators, has determined that the rules of evidence permit hearsay evidence similar to that at issue in this case. *See In re Commitment of Carr*, No. 09-14-00156-CV, 2015 WL 1611949, at *2 (Tex. App.—Beaumont Apr. 9, 2015, no pet.) (mem. op.) (trial court did not err by permitting testifying expert to testify about nontestifying expert's report that concluded appellant suffers from behavioral abnormality); *In re Commitment of Winkle*, 434 S.W.3d 300, 315 (Tex. App.—Beaumont 2014, pet. denied) (trial court did not abuse its discretion in admitting, over hearsay objection, expert's testimony that two nontestifying experts found appellant has behavioral abnormality); *see also* TEX. HEALTH & SAFETY CODE ANN. § 841.041(a) (West 2010). An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. TEX. R. EVID. 703. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. *Id.* Rule of evidence 705(a) permits a trial court to admit the underlying facts or data on which an expert has based an opinion. TEX. R. EVID. 705(a); *In re Commitment of Ochoa*, No. 09-15-00486-CV, 2016 WL 5417441, at *4 (Tex. App.—Beaumont Sept. 29, 2016, pet. denied) (mem. op.); *Carr*, 2015 WL 1611949, at *2. Thus, when an expert relies upon hearsay in forming her opinion, and that hearsay evidence is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it. *See Carr*, 2015 WL 1611949, at *2; *In re Commitment of Salazar*, No. 09-07-345-CV, 2008 WL 4998273, at *4 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). If the underlying facts or data would otherwise be inadmissible, those facts or data should be excluded only if their probative value in helping the jury evaluate the opinion is outweighed by their

prejudicial effect. TEX. R. EVID. 705(d). Rule 705(d) provides for the use of a limiting instruction by the court to ensure that otherwise inadmissible evidence is not improperly used by the jury. TEX. R. EVID. 705(d); *Salazar*, 2008 WL 4998273, at *4.

Although he did not mention rule 705 at trial or in his appellate brief, Sawyer acknowledges that an expert may testify about the underlying facts or data on which the expert has based an opinion. Sawyer contends that Dr. Varela's report was not used as the basis for Dr. Reed's testimony, but was instead used to improperly bolster Dr. Reed's findings and as substantive evidence throughout the prosecutor's questioning of Sawyer. Sawyer also contends that references to Dr. Varela's evaluation should have been excluded as unfairly prejudicial under rule 403.

While the record reflects that Sawyer objected on grounds of hearsay and unfair prejudice, the record does not show that Sawyer raised in the trial court the specific argument he now makes that the evidence about Dr. Varela's report was not admissible because it was not used to show the basis for Dr. Reed's opinion, but to improperly bolster her opinion and as substantive evidence. Accordingly, we conclude this particular argument is not preserved for our review. *See* TEX. R. APP. P. 33.1(a). In addition, Sawyer's complaints about the State's use of Dr. Varela's evaluation during Sawyer's own testimony, are likewise not preserved. *See id.* The trial court made clear when it granted Sawyer's request for a running objection during Dr. Reed's testimony that the running objection was "just for this witness." Sawyer did not raise any hearsay or rule 403 objections during his testimony.

As for the objections Sawyer did make about Dr. Varela's report, we conclude the trial court acted within its discretion in admitting the evidence under rule 705(a). We concur with the Ninth Court of Appeals that rule 705 permits a trial court to allow a testifying expert to give a nontestifying expert's opinion that an individual suffers from a behavioral abnormality. Here, Dr. Reed testified that her evaluation of Sawyer included a review of various records. She reviewed

–11–

Dr. Varela's prior evaluation of Sawyer that was included with the records from prison. She stated that she relied upon the information contained in his report. She used the methodology followed by other experts that perform these types of evaluations. Further, the trial court properly applied rule 705(d) by giving the jury limiting instructions. The judge instructed the jury orally and in the charge that the hearsay was admitted only for the purpose of showing the basis of the expert's opinion and could not be considered as evidence to prove the truth of the matter asserted. Absent record evidence to the contrary, we presume the jury followed the court's limiting instructions. *See In re Commitment of Stuteville*, 463 S.W.3d 543, 555 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Sawyer does not assert there is anything in the record to show the jury ignored the court's instructions. We conclude the trial court did not abuse its discretion in determining that the evidence was admissible and not unfairly prejudicial.

Finally, we note that part of Sawyer's complaint involves the prosecutor's closing statement. Sawyer quotes three parts of the prosecutor's argument, including "Two experts . . . say that he suffers from a behavioral abnormality. Two experts that say he is a pedophile." Sawyer did not object to the arguments about which he now complains and thus has not preserved any error in the closing argument for our review. *See* TEX. R. APP. P. 33.1(a). We overrule Sawyer's first issue.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Sawyer contends the evidence is legally insufficient to prove he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Sawyer contends Dr. Reed's opinion that he suffers from a behavioral abnormality amounts to no evidence. He maintains her opinion was conclusory and speculative. Sawyer argues that Dr. Reed was unfamiliar with relevant statistics on the rate of reoffense or chose to

–12–

ignore them. He asserts Dr. Reed's testimony did not provide any information on his likelihood to reoffend that jurors could not have determined for themselves.

Because the civil commitment statute requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator, we review the legal sufficiency of the evidence using the appellate standard of review for criminal cases. *Brown*, 2018 WL 947904, at *8. We assess the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the elements required for commitment beyond a reasonable doubt. *Id.* "It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts." *Id.* (quoting *Stuteville*, 463 S.W.3d at 551).

As stated, Sawyer argues that Dr. Reed's opinions were con201clusory and speculative and therefore constitute no evidence. Opinion testimony that is wholly conclusory or speculative amounts to no evidence because it does not tend to make the existence of a material fact more probable or less probable. *In re Commitment of Rogers*, No. 05-17-00010-CV, 2018 WL 360047, at *5 (Tex. App.—Dallas Jan. 11, 2018, pet. filed) (mem. op.). Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence. *Id.* When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable. *Id.* But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, even if no objection was made. *Id.*

Sawyer did not object at trial that Dr. Reed's opinions were unreliable. Thus, to prevail on his legal sufficiency claim, he must show that the evidence offers no basis to support her opinions. *See id.*; *In re Commitment of H.L.T.*, No. 10-17-00106-CV, 2017 WL 4413435, at *4 (Tex. App.— Waco Oct. 4, 2017, pet. denied). Dr. Reed is a forensic psychologist who has performed more than sixty evaluations of the type performed in this case. She testified she uses the same

methodology followed by other experts who do these types of evaluations. In determining that Sawyer suffers from a behavioral abnormality, Dr. Reed used three risk assessment measuring tools, the PCL–R, STATIC–99R, and SVR–20. She reviewed many records related to Sawyer, including documents from his convictions and his prison records, and interviewed him. Dr. Reed noted that Sawyer is a recidivist with a history of sexually deviant behavior. He was convicted of three sexual offenses against pre-pubescent children. She diagnosed him with pedophilic disorder and concluded he is at a low to moderate risk for reoffending. Sawyer denied that he was a pedophile and instead attributed his behavior to being bored and stressed. Considering all of this information, Dr. Reed concluded Sawyer suffers from a behavioral abnormality.

After reviewing the record, we conclude it supports Dr. Reed's opinions and that her opinions cannot be characterized as wholly conclusory or without any foundation. *See Rogers*, 2018 WL 360047, at *6. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Sawyer is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The evidence is legally sufficient to support the jury's finding that Sawyer is a sexually violent predator. We overrule Sawyer's second issue.

In his third issue, Sawyer contends the evidence is factually insufficient to support a finding that he is a sexually violent predator. We disagree.

Although factual sufficiency has been abandoned in criminal cases, as an intermediate appellate court with final authority over factual sufficiency challenges in civil cases, we will perform a factual sufficiency review in civil commitment cases when the issue is raised on appeal. *Brown*, 2018 WL 947904, at *8. When conducting a factual sufficiency review in these types of cases, we consider "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id.* (quoting *In re Commitment*

*of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no pet.)). We view all of the evidence in a neutral light to determine whether a jury was rationally justified in finding the defendant is a sexually violent predator beyond a reasonable doubt. *Id.* We will reverse only if, after weighing the evidence, we determine the risk of an injustice remains too great to allow the verdict to stand. *Id.* The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* It is the role of the jury to resolve conflicts and contradictions in the evidence, and we may not substitute our judgment for that of the jury. *Id.*

Sawyer contends that it would be unjust to civilly commit him because "almost all of the evidence against [him] consisted of hearsay," and because of prejudicial unadjudicated offense allegations and conclusory psychological generalizations. He also asserts there are many factors in his favor, including his successful completion of a sex offender treatment program and his lack of psychopathy. The only significant negative risk factors, according to Sawyer, are related to his original crimes, which occurred twenty-five years ago and for which he has already been punished.

The evidence is factually sufficient to support the jury's determination that Sawyer was a sexually violent predator because it does not reflect a risk of injustice that compels granting a new trial. *See id.* at \*6. We have overruled Sawyer's evidentiary issue about hearsay and his argument that Dr. Reed's testimony was conclusory. Sawyer has not raised an issue about unadjudicated offenses. We determined that the evidence is legally sufficient to support the jury's finding. The jury heard Dr. Reed's expert testimony that Sawyer has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. She testified about the risk factors that increased the likelihood Sawyer would reoffend. Weighing the evidence, we conclude there is not a risk of injustice too great to allow the verdict to stand. We overrule Sawyer's third issue.

–15–

We affirm the trial court's judgment and order of commitment.


/Ada Brown/
ADA BROWN
JUSTICE


170516F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE THE COMMITMENT OF
RICKEY LYNN SAWYER

No. 05-17-00516-CV

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. CV1670004.
Opinion delivered by Justice Brown,
Justices Francis and Stoddart participating.

In accordance with this Court's opinion of this date, the trial court's judgment and the order of commitment are **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 11th day of July, 2018.