**Affirmed and Opinion Filed June 7, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00299-CV

## IN RE THE COMMITMENT OF DAVID BASQUEZ, JR.

**On Appeal from the Criminal District Court No. 1
Dallas County, Texas
Trial Court Cause No. CV2070002**

## OPINION

Before Justices Partida-Kipness, Smith, and Breedlove
Opinion by Justice Breedlove

Appellant David Basquez Jr. appeals the trial court's judgment civilly committing him for treatment and supervision pursuant to the Texas Civil Commitment of Sexually Violent Predators Act (SVP Act). *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003. In one issue, appellant argues that the trial court erred by admitting evidence of unadjudicated or unsubstantiated sex offenses. We affirm the trial court's judgment.

## I. SVP ACT COMMITMENT STANDARDS

In 1999, the Texas Legislature enacted the SVP Act to provide a "civil commitment procedure for the long-term supervision and treatment of sexually

violent predators." *See id*. § 841.001. The SVP Act aims to protect the public from a "small but extremely dangerous group of sexually violent predators" who "have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." *Id*. The SVP Act provides for the involuntary civil commitment of a repeat sexual offender who is found to be a sexually violent predator. *Id*. §§ 841.003(a), 081(a).

In a suit to commit a person as a sexually violent predator, the State must prove beyond a reasonable doubt that the person (1) is a "repeat sexually violent offender" and (2) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* §§ 841.003(a), 062(a). As relevant to the present case, a person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id.* § 841.003(b); *see also id.* § 841.002(8) (defining "sexually violent offense"). A "behavioral abnormality," as defined by the SVP Act, is a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). A "predatory act" is an "act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

## II. BACKGROUND

On March 12, 2020, the State filed its petition to have appellant deemed a sexually violent predator and have him civilly committed for treatment and supervision. *See id.* § 841.003, 041. The focus at appellant's jury trial was appellant's sexual offenses and the doctor's evaluation. *See generally id.* §841.061. At trial, the State called Dr. Timothy Proctor and appellant to testify.

### A. Appellant's Sexual Offenses

The record showed appellant's first sexual offense occurred in 1980 when appellant was 17 years old. The victim in the case was G.F.,[1] a boy who was seven years old when the sexual abuse began. According to appellant's testimony, appellant performed oral sex on G.F. about four or five times. He described the victim as "very playful and very promiscuous" and testified that he thought G.F. wanted him to perform oral sex on him. Appellant was sentenced to three years' imprisonment for this offense, probated.

The record showed appellant's second sexual offense also occurred in 1980 when appellant was 17 years old. The victim in the case was V.F., G.F.'s older brother who was nine years old when the sexual abuse began. Appellant testified that the alleged incident with V.F. did not occur and that V.F. was lying. Appellant was sentenced to three years' imprisonment for this offense, probated.

---

[1] We refer to all minor victims by the abbreviations used by appellant in his brief.

The record showed appellant's third sexual offense occurred in 1985 when appellant was 21 years old. The victim in the case was D.B., a boy who was approximately three years old when the sexual abuse began. Appellant admitted in his testimony to performing oral sex on D.B. on several occasions. Appellant was sentenced to 24 years' imprisonment for this offense.

The record showed appellant's fourth sexual offense occurred in 1989 when appellant was 25 years old. The victim in the case was J.B., D.B.'s younger brother who was approximately three or four years old when the sexual abuse began. Appellant admitted in his testimony to performing oral sex on D.B. on several occasions. Appellant was sentenced to 35 years' imprisonment for this offense.

The record also includes evidence of two unadjudicated sexual offenses that form the subject of this appeal as well as several additional non-violent sex-related crimes and prison violations[2]. First, the State offered evidence that appellant sexually assaulted RoRo, a cousin of G.F., after sexually abusing G.F. in RoRo's presence. Appellant denied the allegation regarding RoRo.

Second, according to appellant's voluntary statement provided to the police and admitted without objection, appellant allegedly attempted to sexually assault

---

[2] Appellant does not argue on appeal that the trial court erred in admitting the testimony regarding the additional non-violent sex-related crimes and prison violations, so we do not address their admissibility.

S.L., the six-year-old cousin of G.F., but was interrupted by S.L.'s mother. Appellant also testified to this occurrence on cross-examination.

**B. Doctor Proctor's Testimony**

Dr. Proctor is a board-certified forensic psychologist and licensed Sex Offender Treatment Provider. The State hired him to conduct a risk assessment of appellant and provide his opinions and conclusions regarding whether appellant suffered from a behavioral abnormality. Dr. Proctor explained he reviews records (including criminal, medical, and disciplinary records), interviews the individual face-to-face, reviews deposition testimony from the appellant, and then conducts a risk assessment to determine if the individual has a behavior abnormality.

Dr. Proctor testified that he interviewed appellant for three hours. Based on that interview and his review of the records, Dr. Proctor concluded appellant suffers from a "behavioral abnormality that makes him likely to commit predatory acts of sexual violence." He explained the biggest risk factor he identified in appellant was "sexual deviance" and identified numerous additional risk factors he observed in appellant. He also testified that appellant's unwillingness to acknowledge the problematic elements of his behavior and appellant's insistence on blaming the victims and minimizing or rationalizing his sexual attraction to prepubescent boys are concerns for reoffending. He was similarly concerned with what he called a "chronic long-term pattern" of offending rather than a single instance or a few instances of sexual violence close together in time.

–5–

In determining appellant's diagnosis, Dr. Proctor considered appellant's criminal history, including juvenile criminal history, non-violent sexual offenses and violations of probationary and parole conditions. Dr. Proctor also reviewed the four sexually violent offenses appellant was convicted of and his denial of or excuses for involvement in them. He stated the sexual assault offenses are considered to be violent offenses according to statute.

Dr. Proctor testified he diagnosed appellant with pedophilic disorder. Dr. Proctor would consider appellant "non-exclusive" because his sexual relations included both adults and children. When asked if appellant still suffers from pedophilic disorder, Dr. Proctor explained that the record was clear that appellant has "a history of offending against multiple, pre-puberty male children, being aroused as part of that sexuality," and that the fact that he has not offended against any children while in prison is irrelevant because there are no children in prison. He stated that because of appellant's sexual attraction to children and his history of sexual deviance, appellant is predisposed to commit sexually violent offenses, at high risk to sexually reoffend, and a "menace to the health and safety" of others.

## C. Judgment and Appeal

The jury unanimously found beyond a reasonable doubt that appellant is a sexually violent predator. The trial court civilly committed him for sex offender treatment and supervision. Appellant appealed the trial court's judgment on March 28, 2022. In one issue, appellant complains that the trial court committed reversible

error by admitting evidence of unadjudicated or unsubstantiated sex offenses. In response, the State argues that allowing Dr. Proctor to discuss something that was already before the jury without objection was not reversible error.[3]

### III. STANDARD OF REVIEW

SVP commitment cases require the State to prove the elements beyond a reasonable doubt, as in a criminal case. *Id.* §§ 841.003(a), 841.062(a). Evidentiary rulings are committed to the trial court's sound discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Id.* Even if the trial court abused its discretion in admitting certain evidence, reversal is appropriate only if the error was harmful, i.e., it probably resulted in an improper judgment. *Id.*

An expert in an SVP Act civil commitment proceeding may disclose the underlying facts or data upon which the expert bases his or her opinion if it is a type relied upon by experts in the field in forming opinions on the subject. *In re Commitment of Butler*, No. 05-19-01007-CV, 2021 WL 2525508, at *9 (Tex. App.—Dallas June 21, 2021, no pet.) (mem. op.) (citing *In re Commitment of Talley*, 522 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2017, no pet.), and TEX. R. EVID. 703, 705(a)). The reasoning for this is that having an expert explain the facts

---

[3] We note that the State's brief appears to address the testimony involving only S.L., which was included in appellant's voluntary statement to the police and admitted without objection, and not the testimony regarding RoRo, which was not included in the statement.

–7–

he or she considered, and how those facts influenced his or her evaluation, assists the jury in weighing the expert's opinion that the person has a behavioral abnormality, which is the ultimate issue the jury must determine. *Id.* (citing *Commitment of Langford*, No. 01-18-01050-CV, 2019 WL 6905022, at *3 (Tex. App.—Houston [1st Dist.] Dec. 19, 2019, no pet.) (mem. op.)). But the expert's disclosure of these facts and data is subject to the same relevance constraints that govern admission of other kinds of evidence. *Id.*; see also TEX. R. EVID. 705(d) ("If the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect."); TEX. R. EVID. 403); *Talley*, 522 S.W.3d at 748.

## IV.  DISCUSSION

Appellant argues that the trial court erred in admitting testimony regarding unadjudicated sexual offenses against two separate victims: (1) S.L. and (2) RoRo. Because the circumstances surrounding the admission of these offenses differ, we address them separately.

### A. Testimony Regarding S.L.

According to appellant's voluntary statement, S.L. was approximately six years old when he asked appellant to perform the same sexual act(s) upon him as appellant had upon his cousin, G.F. Appellant was preparing to perform oral sex upon S.L. when his mother entered the room and stopped them. During direct

examination, Dr. Proctor testified to this incident over the objection of appellant. His testimony is limited to the details that were previously provided by appellant in his voluntary statement to police. This voluntary statement was admitted as a trial exhibit without objection. Objections to the admission of evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Mays v. State*, No. 05-13-00086-CR, 2014 WL 3058462, at \*2 (Tex. App.—Dallas July 8, 2014, no pet.) (not designated for publication) (citing *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010)). Because appellant's graphic statement about his attempted crime against S.L. had already been admitted into evidence without objection, any objection to Dr. Proctor's testimony, or appellant's subsequent testimony, regarding the unadjudicated offense against S.L. was harmless. *See id.*

**B. Testimony Regarding RoRo**

Appellant objects to the additional admission of testimony regarding an offense against RoRo that was not included in appellant's previously admitted voluntary statement. Because, unlike the allegations regarding S.L., appellant properly and timely objected to any admission of evidence containing the allegations regarding RoRo, we consider whether the trial court erred in admitting the testimony over appellant's objections. *See id.*

Dr. Proctor testified as follows regarding RoRo: "The police report indicates that it was one occasion and that after sexually offending against [G.F.], Mr. Basquez

then turned on [RoRo] and performed oral sex on him, as well." The State also

elicited testimony regarding the relevance of the unadjudicated sexual offenses:

> **STATE:** So first off, beyond conviction, is it appropriate for an expert, when conducting a behavioral abnormality evaluation, to take into account offenses that did not lead to a conviction?
>
> **DR. PROCTOR:** Yes.
>
> **STATE:** And why is that?
>
> **DR. PROCTOR:** Well, certainly you don't put the same weight on an allegation or a charge that you would on a conviction, but the research points to that it's known that not every, obviously sexual offenses results in a conviction and that instruments like the ones I used, that we'll speak about later, instruct you to look at not only history of convictions but were they ever charged with other sexual offenses or accused [of] other sexual offenses and what were the characteristics of those. Research about sexual offending considers those kinds of data points in order to try to get as full a picture as possible of possible offending. So that is why I do so.

In *Montgomery v. State*, the Texas Court of Criminal Appeals created criteria

for evaluating whether the danger of unfair prejudice substantially outweighs the

probative value of the proffered evidence. 810 S.W.2d 372, 392 (Tex. Crim. App.

1990) (op. on reh'g). Our sister courts have applied a modified version of the

*Montgomery* test in SVP cases to address the admission of evidence of unadjudicated

offenses; we apply that test here. *See, e.g.*, *Commitment of Renshaw*, 598 S.W.3d

303, 314–15 (Tex. App.—Texarkana 2020, no pet.); *Commitment of S.D.*, No. 10-

17-00129-CV, 2020 WL 103721, at *5 (Tex. App—Waco Jan. 8, 2020, no pet.)

(mem. op.); *Commitment of Flores*, No. 13-17-00258-CV, 2018 WL 1755876, at *4

(Tex. App.—Corpus Christi Apr. 12, 2018, no pet.) (mem. op.); *Commitment of Stuteville*, 463 S.W.3d 543, 555 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Commitment of Ford*, No. 09-11-00425-CV, 2012 WL 983323, at *2 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.).

Under the modified *Montgomery* test, we consider the following: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Renshaw*, 598 S.W.3d at 314–15. "[W]hen the record reveals one or more such relevant criteria reasonably conducing to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice," then the trial court abused its discretion in admitting the evidence. *Montgomery*, 810 S.W.2d at 393 (footnote omitted). Here, appellant concedes that the evidence has some probative value and that a relatively brief amount of time was expended to develop the evidence. Therefore, we address only the two remaining contested criteria: (1) the potential of the evidence to impress the jury in some irrational way and (2) the proponent's need for the evidence.[4]

---

[4] However, even if appellant had contested the probative value of the evidence, we would hold that the evidence is highly probative and weighs strongly in favor of its admission. *See Renshaw*, 598 S.W.3d at 314–15 ("In civil commitment cases, evidence of uncharged sexual offenses, when it is used by experts, is 'highly probative and helpful to the jury in explaining the basis of [the expert's] opinion that [a person] has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.'") (quoting *Stuteville*, 463 S.W.3d at 556) (brackets in original).

While the details of the allegation regarding RoRo arguably had the potential to impress the jury, the trial court provided the contemporaneous limiting instruction requested by appellant at trial.[5] "Absent record evidence to the contrary, we presume that the jury followed the court's limiting instructions." *In re Commitment of Millar*, No. 05-18-00706-CV, 2019 WL 3162463, at *2 (Tex. App.—Dallas July 16, 2019, no pet.) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003)). Also, the record before us shows that the allegation was not nearly as graphic as the details of appellant's four convictions or of the admitted-to unadjudicated offense against S.L. Thus, the trial court did not abuse its discretion in finding that the unadjudicated offense against RoRo would not impress the jury in an irrational manner. *See Renshaw*, 598 S.W.3d at 315 (holding that while the details of the unadjudicated offenses had the potential to impress the jury, those allegations were not nearly as sordid as the details of the defendant's convictions).

---

[5] The court's instruction stated:

> Members of the Jury, the Defense has requested a limiting instruction about the disclosure of hearsay testimony in this case. So I am going to instruct you as follows. Hearsay is a statement made by a person at some time, other than while testifying at the current trial or hearing, which a party offers into evidence to prove the truth of the matter asserted in the statement. Generally hearsay is not admissible as evidence during the trial. However, in this case certain hearsay information contained in records was reviewed and relied on by experts and will be presented to you through that expert's testimony. Such hearsay information is being presented to you only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted. You may not consider this hearsay information for any other purpose, including whether the information alleged in the records is true.

Finally, the court did not abuse its discretion in finding that there was a need to present evidence of the unadjudicated offense against RoRo to show the basis of Dr. Proctor's opinion that appellant suffered from a behavioral abnormality. Without this offense, the jury would not be basing its verdict on "the full picture of [appellant's] sexual deviancy," *see id.*, which was necessary to establish the basis for Dr. Proctor's opinion regarding appellant's status as a sexually violent predator. Further, Dr. Proctor testified that the scientific instruments and tests he relied upon in forming the basis of his opinion, as well as the prevailing research, consider unadjudicated offenses, which is why they are important to the jury's understanding of appellant's likelihood of reoffending. The trial court could have reasonably concluded that the facts and details related to the offense against RoRo "would be helpful to the jury in weighing [appellant's] testimony and [the expert's] testimony, and in explaining the basis for [the expert's] opinion[s] that [appellant] suffers from a behavioral abnormality." *See id.* at 316 (quoting *Stuteville*, 463 S.W.3d at 556) (brackets in original). Thus, this factor also weighs in favor of admission. *See id.* at 315.

Based on the record before us, we conclude that the trial court did not abuse its discretion in refusing to find that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. "Given the purpose for admitting this evidence and the trial court's limiting instructions, we hold that the

trial court did not abuse its discretion by admitting evidence of uncharged offenses."

*Id.* (quoting *Stuteville*, 463 S.W.3d at 556).

## V.     CONCLUSION

We affirm the trial court's judgment.

220299f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

IN RE THE COMMITMENT OF
DAVID BASQUEZ, JR.

No. 05-22-00299-CV

On Appeal from the Criminal District
Court No. 1, Dallas County, Texas
Trial Court Cause No. CV2070002.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Smith participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 7th day of June 2023.