

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00586-CV

**IN RE THE COMMITMENT OF** Robert **HAMPTON**

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. CVW2000455
Honorable Russell Wilson, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Irene Rios, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: July 19, 2023

AFFIRMED

Robert Hampton appeals the trial court's judgment declaring him a sexually violent predator and civilly committing him. We affirm the judgment.

## BACKGROUND

In 1990, Hampton pleaded guilty to one charge of rape and one charge of sodomy of a fourteen-year-old girl, C.B., in Jackson County, Oregon. The Oregon court sentenced Hampton to three years' probation. Hampton's probation was subsequently revoked, and he spent six months in an Oregon state jail.

In 1995, Hampton pleaded guilty to sexual abuse of his four-year-old daughter, L.H., in Oregon. He was again sentenced to three years' probation, and his probation was again revoked,

leading to a six-month jail sentence. During the trial in this case, Hampton admitted that he "absconded" from Oregon after the second revocation.

In 1996, in a case involving an eleven-year-old girl, R.S., Hampton pleaded no contest to aggravated sexual assault of a child and injury to a child in Wilson County, Texas. The Wilson County court sentenced Hampton to thirty-five years' confinement in the Texas Department of Criminal Justice. Hampton was serving that sentence at the time of the trial in this case.

On July 13, 2020, the State of Texas filed a petition alleging that Hampton was a sexually violent predator as defined by Chapter 841 of the Texas Health and Safety Code. On June 13, 2022, a Wilson County jury found beyond a reasonable doubt that Hampton was a sexually violent predator, and the trial court signed a final judgment and order of civil commitment consistent with the jury's verdict. Hampton filed a motion for new trial, which the trial court denied. Hampton now appeals.

## ANALYSIS

### Standard of Review and Applicable Law

Chapter 841 of the Texas Health and Safety Code establishes procedures for the civil commitment of persons found to be "sexually violent predators." *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153. "A person is a sexually violent predator for the purposes of [Chapter 841] if the person: (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). "A person is a repeat sexually violent offender" if he has been "convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses[.]" *Id.* § 841.003(b). A "behavioral abnormality" that will support a sexually violent predator finding is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to

the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2). "The U.S. Supreme Court requires the State to prove that a respondent has 'serious difficulty in controlling [his] behavior' in order to civilly commit him under any SVP statute." *In re Commitment of Stuteville*, 463 S.W.3d 543, 552 (Tex. App.— Houston [1st Dist.] 2015, pet. denied) (quoting *Kansas v. Crane*, 543 U.S. 407, 413 (2002)).

Hampton does not challenge the jury's finding that he "is a repeat sexually violent offender." TEX. HEALTH & SAFETY CODE § 841.003(a)(1), (b). However, he argues the evidence presented at trial was factually insufficient to support a behavioral abnormality finding. *See id.* §§ 841.003(a)(2), 841.002(2).

In reviewing such a factual sufficiency challenge to a sexually violent predator finding, we must "determine whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is" a sexually violent predator as defined by Chapter 841. *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020). We "may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony," and we must presume the jury "resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." *Id.*; *see also In re Commitment of Brown*, 656 S.W.3d 418, 432 (Tex. App.—El Paso 2022, no pet.) (jury may disregard testimony it does not find credible). We may not reverse the finding on factual insufficiency grounds unless the "evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true[.]" *In re Commitment of Stoddard*, 619 S.W.3d at 668.

### *Application*

At trial, the jury heard testimony from Hampton and a forensic psychologist, Jason Dunham. The jury also saw records of Hampton's Oregon and Texas convictions.

Hampton testified that he began committing crimes when he was a teenager and that he had been arrested multiple times for crimes such as burglary, public intoxication, and forgery. He told the jury he had used and sold drugs, that he had problems with alcohol and committed crimes while he was drinking, and that he had been convicted of furnishing alcohol to C.B. and two other minors. He testified he had been "clean and sober" since he went to prison in 1996. He admitted, however, that he had "tasted alcohol" during his time in prison even though he knew he was not allowed to drink. He also admitted that he had been subject to disciplinary action approximately fourteen times during his twenty-seven years in prison.

Hampton acknowledged that he had been convicted of sexual offenses against C.B., L.H., and R.S. He told the jury that he pleaded guilty to the charges involving C.B. "because I did that." He also claimed, however, that he believed C.B. was over eighteen at the time and that he did not remember any details of the assault on her. He told the jury that he did not believe he would have assaulted C.B. if he had not been drinking and using drugs at that time. While Hampton admitted that he pleaded guilty to the charges involving L.H. and no contest to the charges involving R.S., he claimed he did not remember assaulting either L.H. or R.S. He acknowledged that he gave alcohol to both C.B. and R.S. before the events that led to his convictions. He also conceded that he gave so much alcohol to R.S. that he was ultimately convicted of injury to a child.

Hampton denied that he is sexually attracted to underage girls. He testified that he was "[a]bsolutely ashamed" of his offenses and that he had "really matured in prison[.]" He also testified that he had completed a nine-month sex offender treatment program, as well as several religious programs and courses in prison.

Dunham testified that he performed a "behavioral abnormality assessment" that included a two-and-a-half-hour interview with Hampton; a review of "[p]olice reports, victim statements, court documents, prison records"; a conversation with Hampton's sex offense treatment provider;

and standard psychological tests. Dunham also considered "protective factors" in his evaluation, such as Hampton's age and his completion of a sex offender treatment program. Dunham told the jury that during his career as a forensic psychologist, he had performed 288 similar evaluations in Texas and another 68 evaluations in Washington.

Dunham testified that it was important for him to review records of Hampton's past behavior because "you look at patterns of behavior. If you're looking to see what's going to happen in the future, look at what's happened in the past." He noted that "the more information and the more things that are consistently lining up in the past, the more accurate you feel about what you believe is going to happen in the future."

Based on his evaluation, Dunham diagnosed Hampton with pedophilic disorder, which he described as a "sexual deviance" that caused Hampton to be sexually attracted to children. Dunham testified that sexual deviance like pedophilia is generally a congenital or acquired condition, and he opined that the condition had affected Hampton's emotional and volitional capacity to safely function in society. He explained that many people who are sexually attracted to children are never diagnosed with pedophilia because those people are able to "control their desires. They control what they're aroused to if they know that it's wrong or they'll get in trouble for [it]." He explained that Hampton, in contrast, "has acted on his thoughts. He has acted on his desires, and he's offended against children based on that condition that he has." He noted that Hampton had committed sexual offenses against children multiple times, even after he had been prosecuted and punished for those actions. Dunham opined that Hampton would sexually assault children again if he were released.

Dunham also diagnosed Hampton with antisocial personality disorder and psychopathy, which he identified as "an extreme version of antisocial personality disorder." He described antisocial personality disorder as manifesting in "lawbreaking behavior, like a consistent pattern

of violating the laws of society, the norms of society, the rights of others[.]" As support for his conclusion that Hampton met the diagnostic criteria for antisocial personality disorder, Dunham noted Hampton's "nonsexual and sexual criminal history" going back to his teenage years. He testified that Hampton's documented parole and probation violations were "very significant" because those violations showed that Hampton was not "able to follow the most structured of rules that are out there." Dunham described antisocial personality disorder as "persistent" and stated the disorder "changes over time but it doesn't go away." He noted that Hampton's antisocial personality disorder appeared to have "changed as he's gotten older but it hasn't gone away."

Dunham evaluated Hampton under the Psychopathy Checklist-Revised, which he described as "pretty much mandated in our profession to measure how psychopathic somebody is." Dunham told the jury that "the higher somebody is in psychopathy," the more likely that person is to reoffend. He noted that Hampton scored a twenty-eight, which he identified as "within the high range." Dunham testified that Hampton's level of "criminal versatility" was an important factor in his score, because "six or more categories [of criminal offenses], that's like the highest you can rate that item of psychopathy." He explained that Hampton's records showed "eight different categories" of criminal offenses.

Dunham testified that it is rare for a person to have both pedophilic disorder and a high range of psychopathic traits. He testified that where, as here, a person "meets the criteria for pedophilia and they're not just antisocial but psychopathic, that's a pretty dangerous combination . . . they're at risk for seriously harming children and in this case I've seen that."

Dunham also evaluated Hampton using a test called the Static 99R. He described the Static 99R as "the most widely used test that's being given right now, and it covers some important risk factors" such as "[p]rior sex offenses, charges and convictions, victim characteristics." Hampton's score on the Static 99R was three, which Dunham described as "within the average risk category

of being reconvicted of a sex offense within a certain number of years." As one of our sister courts recently recognized, however, "civil commitments have been upheld even when the person scored a zero on the STATIC-99R." *In re Commitment of Renshaw*, 598 S.W.3d 303, 313 (Tex. App.—Texarkana 2020, no pet.) (citing *In re Commitment of Ramshur*, No. 09-17-00286-CV, 2018 WL 6367529, at *2 (Tex. App.—Beaumont Dec. 6, 2018, no pet.) (mem. op.)). Dunham noted, moreover, that Hampton scored a three overall even after he received a three-point deduction due to his age.[1] Dunham testified that he believed the Static 99R score underestimated Hampton's risk of reoffending in the future. *See id.*

Dunham described Hampton's pattern of pedophilia and antisocial behavior as "something that doesn't go away. It's lifelong." He told the jury that based on his evaluation, he believed Hampton had a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. He reached this conclusion based on Hampton's "pattern of behavior, the offending after being, you know, imprisoned for sex offending in the past, having very little time in society, reoffending back into prison or being locked up probably within a few weeks after being let out of the Oregon prison, just being unable to control the behavior when in society." He explained that "most sex offenders do not reoffend" but noted that Hampton "within like a few months of getting released from prison for a sex offense, [was] sexually offending again and in a very dangerous way." Dunham further noted that he had reviewed records showing both C.B. and R.S. were unconscious when Hampton assaulted them and that both offenses occurred under circumstances where Hampton's actions "could be easily detected." He also testified that based on both his interview with Hampton and what he heard during Hampton's trial testimony, he believed

---

[1] Hampton was sixty-three years old at the time of trial. Dunham explained that "[Hampton's] age is a protective factor, statistically" because "generally around age 60 and above you start to see some decline, especially for child molesting."

Hampton tended to justify, minimize, and rationalize his past behavior. *See, e.g.*, *In re Commitment of Brown*, 656 S.W.3d at 432–33 (respondent's "minimization of his sexual attraction to his victims" supported jury's sexually violent predator finding). Dunham testified these factors showed Hampton could not control his impulses.

Hampton complains on appeal that the evidence of his past behavior does not support a finding that he currently suffers from a behavioral abnormality. He also argues Dunham's testimony merely established "that Hampton has not managed his condition in the *past*," and he contends the evidence did not establish that he currently has a serious problem in controlling his behavior. However, Dunham testified that Hampton's pedophilia, antisocial personality disorder, and psychopathy are "chronic," "lifelong" conditions that do not "go away." Dunham also testified that the rationalizing Hampton engaged in showed Hampton "doesn't understand" the risk he poses to children. He opined that Hampton's minimization of his past behavior rendered him unable to "really move on to the next steps which would be victim empathy and relapse prevention until you truly understand why you did what you did[.]" He added that Hampton had not shown any signs of applying what he learned in the sex offender treatment program, explaining, "[T]here's a wall there that I don't think that he's gotten through."

Because the jury found Hampton was a sexually violent predator, we must presume it credited Dunham's testimony over Hampton's. *See, e.g.*, *In re Commitment of King*, 657 S.W.3d 16, 29–30 (Tex. App.—El Paso 2022, pet. denied). Dunham testified that his opinions were based on standard methodology and he explained the bases for his opinions to the jury. *In re Commitment of Day*, 342 S.W.3d 193, 217 (Tex. App.—Beaumont 2011, pet. denied). After reviewing the entire record under the appropriate standard of review, we conclude the evidence the jury could not have reasonably credited in favor of the behavioral abnormality finding was not "so significant that the jury could not have found beyond a reasonable doubt that [Hampton] suffered from the requisite

behavioral abnormality that made him likely to engage in a predatory act of sexual violence." *In re Commitment of Stoddard*, 619 S.W.3d at 677. Accordingly, the evidence was factually sufficient to support the jury's finding. *See id.*

We overrule Hampton's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice