# NO. 12-23-00240-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | *APPEAL FROM THE 7TH* |
| *COMMITMENT OF* | § | *JUDICIAL DISTRICT COURT* |
| *LAKENDRICK LAMONT WILLIAMS* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Lakendrick Lamont Williams appeals his civil commitment following the trial court's adjudication that he is a sexually violent predator. In his sole issue, Williams challenges the factual sufficiency of the evidence supporting the trial court's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We affirm.

### BACKGROUND

On February 8, 2023, the State filed a petition seeking to have Williams adjudicated a sexually violent predator and committed for treatment and supervision pursuant to Chapter 841 of the Texas Health and Safety Code (the SVP Act). A jury found beyond a reasonable doubt that Williams is a sexually violent predator, and the trial court signed a final judgment and order of civil commitment. Williams filed a motion for new trial, which the trial judge denied. This appeal followed.

### FACTUAL SUFFICIENCY

In his sole issue, Williams challenges the factual sufficiency of the evidence supporting the finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

**The Evidence**

Williams's first sexual offense was attempted indecency with a child by contact in November 2006. Williams pleaded "guilty." The male victim was nine years old, and although Williams knew the victim's mother, the victim was not a member of Williams's family. The offense occurred when Williams, who had been smoking and drinking, entered the child's bedroom, attempted to put his hand inside the child's underwear while the child was asleep, and touched the child's buttocks.[1] In February 2009, Williams received a two-year sentence for the offense.

Subsequently, Williams committed another sexual offense in July of 2013. The seven-year-old victim was the son of a woman Williams's father was dating. The victim was non-verbal and severely autistic. Williams made the victim touch Williams's genitals, and Williams laid down on the bed next to the victim with his genitals against the victim's buttocks. An adult walked in on Williams during the offense and contacted law enforcement. Williams pleaded "guilty" to indecency with a child by contact and received a sentence of ten years of confinement. Williams was eventually released on parole but failed to comply with sex offender registration requirements. Williams attended an initial session of sex offender treatment but missed the next two sessions and was unsuccessfully discharged from treatment.

With respect to nonsexual offenses, Williams was charged with burglary, and after the charge was reduced to mischief and criminal trespassing, he was convicted. The offense occurred when Williams went to the home of the family of someone he previously dated, entered the backyard, left the gate open, cut the phone lines connected to the house, and attempted to enter the home. Residents of the home saw Williams in their yard and alerted law enforcement. Williams was also convicted of two charges of theft of property. Williams received probation for one of the theft charges, and his probation was ultimately revoked. Williams also has a pending charge for failure to register as a sex offender.

Licensed psychologist Dr. Stephen Thorne testified that he has performed behavioral abnormality evaluations for approximately seventeen years, and he estimated that he has performed between 350 and 400 such evaluations. According to Dr. Thorne, forensic psychology

---

[1] Williams also rubbed the victim's older brother's arm, told him he was handsome and strong, and instructed him not to tell his mother. Williams was not convicted of a sexual offense pertaining to the incident with the victim's older brother.

involves "looking at patterns of behavior over time[.]" When Dr. Thorne conducts behavioral abnormality evaluations, he makes a specific medical or psychological diagnosis because he believes that doing so assists with framing and organizing information, but he explained that the behaviors or symptoms that underlie the diagnosis are more important than the diagnosis itself.

In conducting behavioral abnormality evaluations, Dr. Thorne examines risk factors, which increase a person's likelihood of reoffending, as well as protective factors, which lower a person's risk of reoffending. Dr. Thorne explained that some of the relevant factors include employment history, substance use, relationship history, sexual history, psychiatric history, sexual and nonsexual criminal history, prison history, and sex offender treatment history, and many of the relevant risk factors "fall under the two umbrellas of sexual deviancy and antisocial behavior." According to Dr. Thorne, nonsexual offenses are significant because they can indicate a pattern of engaging in illegal or antisocial behavior, while sexual offenses are significant because they can indicate sexual deviancy. Dr. Thorne testified that behaviors and incidents that do not result in conviction may also be relevant, such as the existence of undocumented victims or "sexually inappropriate or abusive or deviant behavior that [did not] result in a conviction."

Dr. Thorne began his evaluation by reviewing records regarding Williams, including law enforcement records, documents pertaining to his convictions, medical and disciplinary records from prison, Williams's deposition, parole records, a previous Static 99-R form, and a clinical interview form from the Texas Department of Criminal Justice's Sex Offender Rehabilitation Program. After reviewing the records, Dr. Thorne met with Williams virtually for approximately two hours and ten minutes, and he administered psychological tests (the Static-99R and the Hare Psychopathy Checklist), scored them, and prepared a report. Dr. Thorne concluded that Williams is not a psychopath, and he explained that Williams's score on the Static-99R indicates that he is an average risk for reoffending.

Using the criteria set forth in the Diagnostic and Statistical Manual, Fifth Edition (DSM-V), Dr. Thorne diagnosed Williams with the nonexclusive type of pedophilic disorder and "other specified personality disorder with antisocial personality disorder traits." Dr. Thorne explained that he diagnosed Williams with "other specified personality disorder . . . with antisocial personality disorder traits" rather than antisocial personality disorder because he could not prove that Williams displayed antisocial personality traits before the age of fifteen, as the DSM-V requires for a diagnosis of antisocial personality disorder. According to Dr. Thorne, if a person

3

exhibits "a pattern of sexually deviant thoughts, actions, behaviors, [or] fantasies relating to a prepubescent child, and . . . those thoughts, behaviors, [or] fantasies last for a period of over six months," then the person "meets the diagnostic criteria for pedophilic disorder."

When asked whether his pedophilia diagnosis was "based primarily on the conviction information[,]" Dr. Thorne testified that Williams's 2006 and 2013 convictions for sexual offenses against prepubescent children establish that Williams meets the diagnostic criteria for pedophilic disorder. Dr. Thorne further explained that although Williams's first offense was an attempt rather than a completed offense, Williams nevertheless meets the diagnostic criteria for pedophilic disorder because he exhibited sexual thoughts, fantasies, and behaviors about the prepubescent victim, and his sexual offenses were more than six months apart. According to Dr. Thorne, when Williams gave a statement to the authorities about his second sexual offense, he initially denied committing the offense, but "the records suggest he did ultimately acknowledge the sexual contact and being aroused by the sexual contact between him and [the victim]." Dr. Thorne opined that Williams's admission regarding being sexually aroused during the second offense is more significant than his conviction.

According to Dr. Thorne, because pedophilic disorder is a lifelong diagnosis that must be managed and treated, it will not go away over time. Dr. Thorne agreed that pedophilic disorder "in and of itself" does not constitute a behavioral abnormality, and he acknowledged that incarcerated people often display antisocial personality traits. Dr. Thorne testified that he conducted his evaluation of Williams in accordance with his training as a psychologist and in accordance with accepted standards in the field of psychology, and he opined that Williams has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Thorne stated that "studies . . . have shown that . . . the strongest risk factor, statistically, is an individual who violates the terms and conditions of supervision." Dr. Thorne explained that Williams's sexual offenses indicate sexual deviancy, and he testified that sex offenders who select boys as victims have higher rates of recidivism. Dr. Thorne identified "quality and comprehensive sex offender treatment" as important to managing pedophilic disorder and reiterated that Williams only attended one session of sex offender treatment. Williams told Dr. Thorne that he is not interested in sex offender treatment, does not believe he needs it, and does not consider himself a sex offender.

4

Dr. Thorne noted that although not every sex offender who is diagnosed with pedophilic disorder has a "behavioral abnormality" as defined in the SVP Act, Williams has multiple victims, persisted with offending after punishment, has relevant nonsexual criminal behaviors, was unsuccessfully discharged from sex offender treatment, and has "some psychiatric issues that are relevant to behavior abnormality." Dr. Thorne also stated that Williams currently takes psychotropic medication and "reported . . . hearing voices, misinterpreting reality, [and] being suicidal[,]" all of which can potentially impact his volitional control and increase his risk for impulsive behavior. According to Dr. Thorne, the Static-99R takes protective factors into account, and he explained that Williams's protective factors include: (1) his victims were not strangers, (2) he has some social support, and (3) he maintained employment for most of his life. Dr. Thorne also testified that Williams worked toward obtaining a GED during his current incarceration.

During his incarceration, Williams had three disciplinary cases related to sexual misconduct, all of which involved consensual sexual behavior with another inmate. In 2023, methamphetamine was found in Williams's cell. According to Dr. Thorne, if the methamphetamine belonged to Williams, the violation is relevant because it indicates that Williams is "not reining in that impulse to do something illegal or antisocial[.]" Williams did not commit any sexual assaults during his incarceration, but Dr. Thorne testified that Williams is nevertheless likely to commit a sexual offense in the future because he lacked access to prepubescent victims in prison. Dr. Thorne explained that the fantasies, thoughts, and behaviors that occur with pedophilic disorder constitute a congenital or acquired condition that affects Williams's emotional or volitional capacity, as defined in the SVP Act. Dr. Thorne reiterated his opinion that Williams currently has a behavioral abnormality that affects his emotional or volitional capacity and predisposes him to commit a sexually violent offense, to the extent that Williams is a menace to the health and safety of another person.

Williams testified that he is forty-five years old and currently incarcerated for indecency with a child by contact. Williams denied attempting to enter the home of his girlfriend's family or causing any damage to the telephone wires, but he pleaded "guilty" when the State agreed to reduce the charge from burglary to criminal mischief and trespassing. Williams admitted that he pleaded "guilty" to theft of property from Wal-Mart in 1998. According to Williams, his first sexual offense occurred in November 2006, and he was ultimately convicted of indecency with a child by contact in February 2009. Williams denied attempting to put his hand inside the victim's

underwear, and he stated, "[it] never even crossed my mind to do anything like that to a child." Additionally, Williams denied ever rubbing the arm of the victim's older brother or telling him he was strong and handsome. When impeached with the stipulation of evidence, in which he admitted that he had sexual contact with the victim, Williams explained, "that was on a plea agreement, and that's why it was signed[.]" Williams testified that he knew the victim of his second sexual offense was autistic and nonverbal, and he denied any sexual contact with the victim or getting into the victim's bed. When questioned again regarding the stipulation of evidence that he signed upon pleading "guilty," Williams stated, "it was a plea agreement." Williams testified that the victims of his sexual offenses are considered to be victims because he "was accused of sexually touching them" rather than because of anything he did to them.

Williams testified that during his incarceration, he was disciplined for refusing to comply with orders, having contraband, tampering with the locking mechanism on his cell, making a false statement about being sexually harassed by another inmate, and engaging in consensual sexual acts with another inmate. Williams admitted to drinking alcohol and taking drugs in the past but denied using drugs or alcohol in prison, and he explained that the pipe found in his cell belonged to his cellmate. Williams stated that he has not received treatment for substance abuse. According to Williams, when he was in fifth grade, he was raped more than once by an adult male, but he never reported it because he was afraid to do so.

Williams left school during the eleventh grade but worked toward obtaining his GED during his incarceration. Williams explained that he obtained a license as a certified nurse's assistant (CNA), and he worked as a CNA for approximately ten years. Williams testified that he lacked money to attend sex offender treatment as required by the terms of his parole, which resulted in revocation of his parole. Williams plans to live in Tyler upon release from prison, and his support system includes his grandmother, mother, and sister. Williams explained that he does not believe he needs sex offender treatment because he never committed a sexual offense, and he believes he is not at risk of committing a sexual offense in the future. Williams testified, "I don't mess with children. I mean, . . . it's something that just doesn't sit right with me. There's nothing that a child can do for me."

**Standard of Review and Applicable Law**

In reviewing the factual sufficiency of the evidence, we must decide whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the offender is a sexually

violent predator. *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020). It is the factfinder's responsibility to determine the credibility of the witnesses and the weight to be given their testimony, to resolve any conflicts in the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *In re Commitment of Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). "[T]he appellate court may not usurp the jury's role of determining the credibility of the witnesses and the weight to be given their testimony . . . [and] must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." *Stoddard*, 619 S.W.3d at 668. "If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true, the evidence is factually insufficient[.]" *Id.* We "may not ignore 'undisputed facts that do not support the finding' and must otherwise presume the factfinder resolved disputed evidence in favor of the ruling if a reasonable factfinder could do so." *Id.* at 676 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In a factual sufficiency review, we consider whether the disputed evidence that a factfinder could not have resolved in favor if its ruling "is so significant that the factfinder could not have determined beyond a reasonable doubt that the statutory elements were met." *Id.* In reviewing factual sufficiency, we must weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

The SVP Act provides for the involuntary long-term supervision and treatment of sexually violent predators who meet specified statutory criteria. TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2017); *Stoddard*, 619 S.W.3d at 669. The State must prove beyond a reasonable doubt that the person is a "sexually violent predator." TEX. HEALTH & SAFETY CODE ANN. § 841.062 (a) (West Supp. 2023). A person is a "sexually violent predator" if he (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West 2017). A "behavioral abnormality" is a congenital or acquired condition that, by affecting the person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person. *Id.* § 841.002(2). "'Predatory act' means an act directed toward individuals, including family members, for the

primary purpose of victimization." *Id*. § 841.002(5). If, after a trial, a court or jury determines that a person is a sexually violent predator, the judge must commit him for treatment and supervision. *Id*. § 841.081(a) (West 2017).

**Analysis**

As mentioned above, Williams argues that the evidence is factually insufficient to support the finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[2] Williams contends that a finding of a behavioral abnormality must "be based on something more than just the previous convictions for which [he] has already been punished." Specifically, Williams asserts that the State "provided no evidence that [he] is a sexually violent predator *today*, relying solely on his previous offenses to prove that [he] currently has a behavioral abnormality."

The jury heard evidence that Dr. Thorne (1) reviewed a file containing numerous records regarding Williams, met with Williams virtually, and scored the Static-99R and Hare Psychopathy Checklist, and (2) diagnosed Williams with pedophilic disorder, as well as a personality disorder with traits of antisocial personality disorder. Additionally, the jury heard Dr. Thorne's testimony regarding Williams's convictions for attempted indecency with a child by contact and indecency with a child by contact, as well as Dr. Thorne's testimony that both offenses indicated sexual deviancy. Moreover, the jury heard evidence regarding Williams's nonsexual offenses, as well as his inability to comply with the terms of parole, disciplinary violations in prison, and failure to comply with sex offender registration requirements, all of which Dr. Thorne testified demonstrate antisocial behavior.

Furthermore, Williams admitted to being sexually aroused during his second offense, and Dr. Thorne testified that Williams met the criteria for pedophilia because his sexual offenses were more than six months apart, and he exhibited sexually deviant thoughts, actions, and behaviors regarding two prepubescent males. The jury also heard Dr. Thorne testify regarding the necessity of sex offender treatment to manage and treat pedophilic disorder, which lasts throughout a person's lifetime, as well as Williams's failure to complete such treatment and his belief that he does not need treatment. In addition, the jury heard evidence from Dr. Thorne that Williams's score on the Static 99-R indicated an average risk of reoffending. Dr. Thorne identified Williams's

---

[2] Williams does not challenge the sufficiency of the evidence supporting the finding that he is a repeat sexually violent offender.

risk factors for recidivism as sexual deviancy, selection of male victims, reoffending after punishment, nonsexual offenses that reveal antisocial traits, psychiatric issues, inability to comply with the terms of parole, failure to comply with sex offender registration requirements, and failure to complete sex offender treatment. Dr. Thorne identified Williams's protective factors as a lack of stranger victims, the existence of social support, and a history of maintaining employment. The jury heard Dr. Thorne opine that Williams has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

The jury heard Williams testify that he worked toward obtaining his GED during his incarceration, he is a licensed CNA, and his mother, grandmother, and sister will provide social support. Additionally, the jury heard Williams deny committing the sexual offenses of which he was convicted after pleading "guilty." The jury further heard Williams testify that he does not believe he is at risk of committing a sexual offense in the future, he does not need sex offender treatment, and he does not "mess with" children.

It was the jury's responsibility to determine the credibility of the witnesses and the weight to be given their testimony, to resolve any conflicts in the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See **Stoddard***, 619 S.W.3d at 668; ***Stuteville***, 463 S.W.3d at 551; ***Mullens***, 92 S.W.3d at 887. The record indicates that, in addition to considering Williams's prior convictions for sexual offenses, Dr. Thorne also considered Williams's diagnoses of pedophilic disorder and other personality disorder with antisocial personality disorder traits, nonsexual criminal history, risk factors for reoffending, protective factors, failure to complete sex offender treatment, inability to comply with the terms of parole, disciplinary infractions in prison, failure to comply with sex offender registration requirements, and the results of the Static-99R and Hare Psychopathy Checklist. After reviewing the entire record, we cannot conclude that the evidence contrary to the jury's finding that Williams has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence was so significant that the factfinder could not have determined beyond a reasonable doubt that its finding was true. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(2), 841,003; ***Stoddard***, 619 S.W.3d at 668; *see also **In re Commitment of Bath***, No. 09-11-00559-CV, 2012 WL 3860631, at *2 (Tex. App.—Beaumont Apr. 6, 2012, no pet.) (mem. op.) (rejecting argument that evidence was factually insufficient because expert relied "almost exclusively" on past convictions and failed to properly weigh positive factors). We further conclude that the verdict does not reflect a risk of injustice that would

compel ordering a new trial. *See **Day***, 342 S.W.3d at 213. Therefore, we conclude that the evidence is factually sufficient to support the jury's finding and the trial court's order of civil commitment. *See **Stoddard***, 619 S.W.3d at 668.

## DISPOSITION

Having overruled Williams's sole issue, we ***affirm*** the trial court's judgment and order of civil commitment.

**BRIAN HOYLE**
Justice

Opinion delivered February 22, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 22, 2024**

**NO. 12-23-00240-CV**

**IN RE: COMMITMENT OF LAKENDRICK LAMONT WILLIAMS**

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 23-0324-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*